















ANDY    12/13/01    11:11
3:96-CV-01661   SEC V. CROW
*39*
*M.*

ORIGINAL

01 DEC 13 AM 9: 34

1  JAMES L. SANDERS CA Bar No. 126291
   McDERMOTT, WILL & EMERY
2  2049 Century Park East, 34th Floor
   Los Angeles, CA 90067-3208
3  Telephone:    310-277-4110
   Facsimile:    310-277-4730
4
   Attorneys for Defendant Michael Crow
5

6

7

8                  UNITED STATES DISTRICT COURT

9                 SOUTHERN DISTRICT OF CALIFORNIA

10                                        BY FAX

11  U.S. SECURITIES AND EXCHANGE        CASE NO. 96 CV 1661 W
    COMMISSION,
12                                      DEFENDANT MICHAEL CROW'S NOTICE
                 Plaintiff,             OF MOTION AND MOTION TO MODIFY
13                                      FINAL JUDGMENT OF PERMANENT
           v.                           INJUNCTION PURSUANT TO FEDERAL
14                                      RULE OF CIVIL PROCEDURE
    MICHAEL CROW AND PETER              60(b)(5); MEMORANDUM OF POINTS
15  KUEBLER,                            AND AUTHORITIES; DECLARATION OF
                                        MICHAEL CROW
16               Defendants.
                                        Date:  January 22, 2002
17                                      Time:  10:30 a.m.

18                                      No Oral Argument

19

20         Please take notice that on January 22, 2002 at 10:30

21  a.m., Defendant Michael Crow ("Crow") will move for the entry of

22  an order modifying the terms of the Final Judgment of Permanent

23  Injunction ("Final Judgment") that was entered against him, by

24  consent, on April 20, 1998.  In his motion, Crow requests the

25  court, pursuant to Federal Rule of Civil Procedure 60(b)(5), to

26  terminate the portion of the Final Judgment that permanently

27  barred him from serving as an officer or director of any public

28  company.  His motion is based on the fact that it is no longer

NUNC PRO TUNC
DEC 11 2001

1  equitable for that portion of the judgment to have prospective

2  effect.

3        Defendant's Motion is based on the attached Memorandum

4  of Points and Authorities; the attached Declaration of Michael

5  Crow, the files and records of this case and any such further

6  supplemental material information as the court will consider

7  prior to or at the hearing on the motion.

8  Dated:  November 5, 2001

9                          Respectfully submitted,

10                         McDERMOTT, WILL & EMERY

11

12                         By:_____

13                            JAMES L. SANDERS
                              Attorneys for Defendant
14                            Michael Crow

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. The Legal Standard

Federal Rule of Civil Procedure 60(b)(5) provides:

> "On motion and upon such terms as are just, the
> court may relieve a party or a party's legal
> representative from a final judgment, order or
> proceeding for the following reasons: . . . (5)
> the judgment has been satisfied, released, or
> discharged, or a prior judgment upon which it is
> based has been reversed or otherwise vacated, <u>or
> it is no longer equitable that the judgment should
> have prospective application</u>; or (6) any other
> reason justifying relief from the operation of the
> judgment." (Emphasis supplied).

In <u>Rufo v. Inmates of Suffolk County Jail</u>, 502 U.S. 367, 112
S.Ct. 748, 116 L.Ed.2d 867 (1992), the Supreme Court held that
Rule 60(b)(5) sets forth a general, flexible standard for all
petitions brought under the equity provision of that rule. Under
<u>Rufo</u>, a district court may grant a Rule 60(b)(5) motion if it
finds a significant change either in factual conditions or in
law. 502 U.S. at 384. Modification may be warranted when changed
factual conditions make compliance with the decree substantially
more onerous. Modification is also appropriate when the decree
proves to be unworkable because of unforeseen obstacles, or when
enforcement of the decree without modification would be
detrimental to the public interest. <u>Id</u>.

## II. Factual Background

During the period from November 1990 through March 1994, Michael Crow ("Crow") served as the President and Chairman of the Board of Wilshire Technologies, Inc. ("Wilshire"). He was a member of the Board of Directors of Wilshire from approximately November 1990 through September 1994. During these periods, Wilshire developed, manufactured and marketed various products including medical clean room products and transdermal drug delivery products. Declaration of Michael Crow ("Crow Decl."), ¶2.

In 1994, the Securities and Exchange Commission ("SEC") began an investigation of Wilshire. This investigation continued for approximately two years. In September 1996, the SEC completed its investigation and filed the instant civil proceeding against Crow and one other individual. Crow Decl., ¶3.

In April 1998, Crow agreed to settle the SEC's civil action by consenting to the entry of a permanent injunction and other relief without "admitting or denying" the SEC's allegations. Pursuant to Crow's consent, on April 20, 1998, Judge Schwartz entered a Final Judgment permanently enjoining Crow from violating Section 17(a) of the Securities Act of 1933 and Sections 10(b), 13(a), 13(b)(2)(A) and 13(b)(2)(B) of the Securities Exchange Act of 1934 and Rules 10b-5, 12b-20, 13a-13, 13b2-1 and 13b2-2 thereunder. The Final Judgment barred Crow from serving as an officer or director of a public company. Crow was also ordered to pay disgorgement in the sum of $1,248,444 plus prejudgment interest of $225,773. The disgorgement portion

DEFENDANT MICHAEL CROW...

of the judgment was satisfied by the payments that Crow had previously made to settle a related class action lawsuit before the SEC filed its action. No fine was imposed on Crow. Crow Decl., ¶4.

In addition to the actions it took in this court, with Crow's consent, the SEC entered an administrative order against Crow barring him from acting as a certified public accountant before the SEC. Crow Decl., ¶6.

### III. The Present Motion

In the present motion, Crow seeks relief from one portion of the Final Judgment - the portion permanently barring him from serving as an officer or director of any public company. Crow does not seek relief from any other portion of the Final Judgment and is not seeking to lift the portion of the judgment requiring him to obey the law in the future.[1]

Crow is bringing the present motion on two equitable grounds. First, the motion is based on the fact that there have been adverse, unforeseen consequences from the officer and director bar that could not have been anticipated by Crow and which presumably were not intended by the SEC. Because of these unforeseen consequences, it is no longer equitable for the officer and director bar to have prospective effect.

Second, the motion is based on the fact that a recent court

[1] In Securities and Exchange Commission v. Coldicutt, 258 F.3d 939 (9th Cir. 2001) the court affirmed the denial of a Rule 60(b)(5) motion seeking to modify an SEC injunction that ordered Coldicutt to "obey the law." Here, Crow is not seeking to modify that portion of his injunction. He is only seeking to modify the officer and director bar provision -- the provision that prohibits him from engaging in otherwise legal activities.

1  decision has held that a permanent officer and director bar is

2  not appropriate in all cases.  The SEC has also recognized this

3  fact in recent consent settlements.  Because of these recent

4  developments, it is not equitable for the permanent bar in this

5  case to be continued.

6  A.   The Unforeseen Consequences of the Permanent Bar

7       As a result of the SEC's investigation and subsequent civil

8  action, during the period from approximately November 1994 onward

9  Crow was not associated with Wilshire as an officer or director.

10 Because of the order barring Crow from serving as an officer and

11 director of any public company, he has not served as an officer

12 or director of any public company up to the present.  Thus, he

13 has effectively been barred from being an officer or director of

14 a public company for seven (7) years.  Crow Decl., ¶6.

15      During the period from approximately 1994 to the present,

16 Crow has worked for private companies in the San Diego area.  He

17 is currently the principal owner and the Chairman and CEO of Zip

18 Direct, a full service design, print, mail, data processing and

19 presort company.  Zip Direct has over 300 employees and 2000

20 clients.  Crow Decl., ¶7.

21      Despite the fact that he has worked and continues to work

22 for private companies, the order barring Crow from being an

23 officer and director of a public company has had a number of

24 direct, negative consequences that no one intended at the time he

25 entered his consent decree.  Those consequences go far beyond the

26 impact of the injunctive order that was entered against him.

27      As reflected in the attached Declaration, in Crow's business

28 dealings on behalf of Zip Direct, many potential clients and/or

1  business partners have mentioned the officer and director bar as
2  a reason why they do not want to deal with Zip Direct.  Likewise,
3  potential lenders and investors have refused to provide Zip
4  Direct with funds, not because of the SEC injunction that was
5  entered against Crow, but instead, for the stated reason that
6  they are concerned about the implications of dealing with someone
7  who has been barred permanently from serving as an officer and
8  director of a public company.  In certain instances, prospective
9  business partners have compared the lifetime bar entered against
10 Crow with shorter bars entered against others -- even others that
11 have been convicted of criminal conduct.  These "unintended
12 consequences" of the permanent bar have impacted the growth of
13 Zip Direct as well as the ability of Zip Direct to hire and
14 retain qualified individuals.  Crow Decl., ¶¶8, 9.

15     It cannot be seriously contended that these adverse
16 consequences of the officer and director bar were intended either
17 by this court or the SEC at the time the Final Judgment was
18 entered.  While they were not intended, these consequences have
19 flowed from the officer and director bar and will continue to do
20 so unless it is modified.

21 B.  The Change in the Law With Respect to Officer and Director
22     Bars

23     Crow consented to the entry of a permanent bar order in
24 1998.  Since that time, one court has held that a permanent bar
25 order is not appropriate in all cases.  The SEC has also
26 recognized this fact and has agreed to settle other cases, even
27 cases involving criminal conduct, without requiring a permanent
28 officer and director bar.

In _Securities and Exchange Commission v. McCaskey_, 2001 U.S. Dist. LEXIS 13571 (SDNY 2001), the court denied the SEC's request for the entry of a permanent officer and director bar order against a defendant who had been convicted of securities fraud. The court considered six factors in reaching its conclusion: (1) the egregiousness of the underlying securities law violation; (2) the defendant's repeat offender status; (3) the defendant's role or position when he engaged in the fraud; (4) the defendant's degree of scienter; (5) the defendant's economic stake in the violation; and (6) the likelihood that misconduct would recur. 2001 U.S. Dist. LEXIS 13571, *18. Applying those factors to the case before it, the court imposed a six-year bar on the defendant.

This same more flexible standard has also been recently used by the SEC. In _Securities and Exchange Commission v. Jeffrey P. Sudikoff, et al._, Civil Action No. 97-7207 DDP (C.D. Cal. 2000), the SEC accepted consent decrees from two defendants who had both pled guilty to criminal offenses. Despite their guilty pleas, the SEC agreed to officer and director bar orders for two of the defendants in that case of twelve years and ten years, respectively. A copy of the SEC's Litigation Release in the _Sudikoff_ case is attached as an exhibit to the Crow Decl.

The facts in the present case were much less egregious than the facts in the cases set forth above. Here, Crow was not charged with a criminal offense. The SEC action against him was the only governmental action brought against him, and he is not a "repeat offender."

In settling its action against Crow, the SEC did not even

1  require him to pay a fine, he was only ordered to pay

2  disgorgement. His disgorgement obligation was completely

3  satisfied by payments he had previously paid to settle a class

4  action. No additional payments were required.

5      In assessing Crow's motion in this case, the change in law

6  is extremely relevant. As demonstrated above, in other cases both

7  the SEC and the courts have recognized that a permanent bar order

8  is not a mandatory remedy. Here, Crow is requesting the court to

9  modify his bar order because of the unintended consequences from

10 the permanent bar order. Under its equitable powers, this court

11 has the ability to modify the order to eliminate the unintended

12 consequences that have flowed from the order. Such a

13 modification to limit the time period covered by the bar is

14 appropriate and would result in a "period of years" bar order

15 that is consistent with bar orders that have been entered in

16 other more egregious cases.

17

18              IV.  CONCLUSION

19      Crow is not seeking a modification of the injunction, he is

20 only asking for a reduction of the term of the officer and

21 director bar. Unlike the injunction, which orders him to obey

22 the law, the officer and director bar prohibits him from engaging

23 in an otherwise legal activity. The impact of the bar is

24 interfering with the operation of his business and impacting his

25 ability to increase revenues and "grow" the business -- something

26 that will benefit the business and its employees.

27      In addition to the adverse, unintended consequences that

28 have flowed from the bar, the bar in this case exceeds the type

1   of relief that both the courts and the SEC have found to be

2   appropriate in other recent cases.

3       For all of the foregoing reasons, Crow respectfully requests

4   this court to enter an order terminating the portion of the Final

5   Judgment that permanently bars him from serving as an officer and

6   director of a public corporation.

7                               Respectfully submitted,

8                           McDermott, WILL & EMERY

9

10                          By _____

11                              James L. Sanders
                                Attorneys for Defendant
12                              Michael Crow

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

of relief that both the courts and the SEC have found to be appropriate in other recent cases.

For all of the foregoing reasons, Crow respectfully requests this court to enter an order terminating the portion of the Final Judgment that permanently bars him from serving as an officer and director of a public corporation.

Respectfully submitted,

McDermott, WILL & EMERY

By _____
James L. Sanders
Attorneys for Defendant
Michael Crow

## Declaration of Michael Crow

I, Michael Crow, hereby state and declare as follows:

1. I am the defendant in the present action. I am submitting this declaration in support of my motion to modify this court's order permanently barring me from serving as an officer and director of any public company. If called to testify in this action, I could and would testify competently to the facts set forth below.

2. During the period from November 1990 through March 1994, I served as the President and Chairman of the Board of Wilshire Technologies, Inc. ("Wilshire"). I was a member of the Board of Directors of Wilshire from approximately November 1990 through September 1994. During these periods, Wilshire developed, manufactured and marketed various products including medical clean room products and transdermal drug delivery products.

3. In 1994, the Securities and Exchange Commission ("SEC") began an investigation of Wilshire. This investigation continued for approximately two years. In September 1996, the SEC completed its investigation and filed a civil complaint against one other individual and me in this court. The case was captioned Securities and Exchange Commission v. Michael Crow and Peter Kushler, Civil Action No. 96-1661 BCM. The SEC filed an Amended Complaint on October 31, 1996.

4. In April 1998, I agreed to settle the SEC's civil action by consenting to the entry of a permanent injunction and other relief without "admitting or denying" the SEC's

allegations. Pursuant to my consent, on April 20, 1998, Judge
Schwartz entered a judgment permanently enjoining me from
violating Section 17(a) of the Securities Act of 1933 and
Sections 10(b), 13(a), 13(b)(2)(A) and 13(b)(2)(B) of the
Securities Exchange Act of 1934 and Rules 10b-5, 12b-20, 13a-13,
13b2-1 and 13b2-2 thereunder. I was also ordered to pay
disgorgement in the sum of $1,248,444 plus prejudgment interest
of $225,773. The disgorgement portion of the judgment was
satisfied by the payments that I had previously made to settle a
related class action lawsuit before the SEC filed its action.
The settlement with the SEC did not require me to disgorge any
additional funds over and above the amounts I had previously
paid, and I was not fined as a part of the settlement. Finally,
I was also barred by consent from serving as an officer or
director of a public reporting company.

    5.    Simultaneously, with my consent, the SEC entered
an administrative order against me. Because I was a certified
public accountant, the SEC administrative order barred me from
practicing before the SEC as an accountant.

    6.    Because of the SEC's investigation and subsequent
civil action, during the period from approximately November 1994
onward I was not associated with Wilshire as an officer or
director. Because of the order barring me from serving as an
officer and director of any public company, I have not served as
an officer or director of any public company up to the present.

    7.    During the period from approximate 1994 to the
present, I have worked for private companies in the San Diego

area. I am currently the principal owner and the Chairman and CEO of Zip Direct, a full service design, print, mail, data processing and presort company. Zip Direct has over 100 employees and 2000 clients.

8. The order barring me from being an officer and director of a public company has had a number of direct, negative consequences that no one intended at the time I entered my consent decree. These consequences go far beyond the impact of the injunctive order that was entered against me. In my business dealings on behalf of Zip Direct, many potential clients and/or business partners have mentioned the officer and director bar as a reason why they do not want to deal with Zip Direct. Likewise, potential lenders and investors have refused to provide Zip Direct with funds, not because of the SEC injunction that was entered against me, but instead, for the stated reason that they are concerned about the implications of dealing with someone who has been barred permanently from serving as an officer and director of a public company. In certain instances, prospective business partners have compared the lifetime bar entered against me with shorter bars entered against others -- even others that have been convicted of criminal conduct. These "unintended consequences" of the permanent bar have impacted the growth of Zip Direct as well as the ability of Zip Direct to hire and retain qualified individuals.

9. In the attached motion, I am seeking a reduction of the officer and director bar that was previously entered by the Court. I am not seeking any modification of the injunctive

order that was entered requiring me to comply with the law.
Since that order was entered, I have complied with the law and
intend to do so in the future. Thus, I am not asking for a
modification of the injunction.

10. While I am not seeking a modification of the
injunction, I am asking for a reduction of the term of the
officer and director bar. Unlike the injunction, this bar
prohibits me from engaging in an otherwise legal activity. The
impact of the bar is interfering with the operation of my
business and impacting my ability to increase revenues and "grow"
the business -- something that will benefit the business and its
employees.

11. I have effectively been barred from being an
officer and director of a public company since 1994 when the SEC
investigation started. During the seven years since that time, I
have fully complied with all of the terms of the SEC settlement,
and I intend to do so in the future. I do not believe that
modifying the bar order will lessen the impact of the injunction
which will continue to stay in place.

12. Since my settlement with the SEC, I have become
aware of other instances where the SEC had brought actions
against individuals for allegedly wrongful conduct. A copy of

an SEC litigation release dealing with one of those cases is attached hereto as Exhibit 1. As reflected in the attached release, two of the defendants pled guilty to criminal conduct. Despite that fact, the SEC accepted settlements from those individuals that only barred the individuals from serving as officers and directors for a period of years -- not their entire lives.

Signed and sworn to this _31st_ day of _October_, 2001, at San Diego, California, under penalty of perjury.

Michael Crow

LA999 18998638-3.062466.0011

Home | Previous Page

# SECURITIES AND EXCHANGE COMMISSION

## Litigation Release No. 16663 / August 28, 2000

Accounting Auditing Enforcement Rel. No. 1296 / August 28, 2000

SECURITIES AND EXCHANGE COMMISSION v. JEFFREY P. SUDIKOFF, EDWARD CHERAMY AND RUDY WANN, Civil Action No. 97-7207 DDP (RCx) (C.D. Cal.)

The Securities and Exchange Commission ("Commission") announced that on August 21, 2000, United States District Judge Dean D. Pragerson of the Central District of California entered final judgments of permanent injunction and other relief against all three defendants in this case, Jeffrey P. Sudikoff ("Sudikoff"), Edward Cheramy ("Cheramy") and Rudy Wann ("Wann"). The judgments were entered pursuant to the consents of the defendants, who neither admit nor deny the allegations of the Commission's Complaint.

The defendants are former officers of IDB Communications Group, Inc. ("IDB"), a telecommunications company formerly headquartered in Los Angeles, California. Sudikoff was IDB's former Chairman and Chief Executive Officer; Cheramy was IDB's former President; and Wann was IDB's former Chief Financial Officer. Sudikoff and Wann reside in Los Angeles, and Cheramy now resides in Wyoming.

The Commission's Complaint alleged that Sudikoff, Cheramy and Wann fraudulently inflated IDB's 1994 first quarter earnings from $9 million to $15 million in order to meet analysts' projections. Sudikoff, Cheramy and Wann then publicly disseminated these overstated earnings in a press release and a Form 10-Q quarterly report filed with the Commission. The Complaint further alleged that Sudikoff, Cheramy and Wann concealed the fraud by fabricating documents, knowingly making false adjusting entries on IDB's books and records in circumvention of IDB's internal controls and lying to IDB's independent auditors. The Complaint also alleged that Sudikoff engaged in insider trading in IDB stock, and tipped his parents, who also traded IDB stock.

In addition to enjoining the defendants from future violations of various antifraud and other provisions of the federal securities laws, as set forth below, Sudikoff was ordered to disgorge $522,505.50, representing his alleged losses avoided on certain insider trades in IDB stock, plus prejudgment interest of $130,050.86, and an Insider Trading and Securities Fraud Enforcement Act penalty of $100,000. Additionally, based upon their alleged financial fraud, all three defendants were ordered to pay civil penalties pursuant to the Securities Enforcement Remedies and Penny Stock Reform Act of 1990. Sudikoff and Cheramy were each ordered to pay the maximum penalty of $100,000, and Wann was ordered to pay $50,000.

Sudikoff and Cheramy were also barred from acting as officers or directors of public companies for periods of twelve years and ten years, respectively. Finally, Cheramy and Wann, both formerly licensed as certified public accountants, have agreed to institution of administrative proceedings against them pursuant to Commission Rule of Practice 102(e) based upon entry of the injunctions against them. Cheramy has consented to be denied the privilege of appearing or practicing before the Commission; Wann has consented to be denied that privilege with a right to reapply for reinstatement after five years.

Each of the defendants consented to entry of a judgment permanently enjoining him from violating the antifraud provisions of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"); the quarterly reporting provisions of Section 13(a) of the Exchange Act and Rules 12b-20 and 13a-13; the internal control and books and records provisions of Section 13(b)(5) of the Exchange Act and Rule 13b2-1 thereunder; and the prohibition against lying to accountants of Exchange Act Rule 13b2-2. Additionally, Sudikoff was permanently enjoined from violating the antifraud provisions of Section 17(a) of the Securities Act of 1933; Sudikoff and Cheramy were permanently enjoined from violating the stock ownership reporting provisions of Section 16(a) of the Exchange Act and Rule 16a-3 thereunder; and Cheramy and Wann were permanently enjoined from violating the reporting provisions of Section 13(a) of the Exchange Act and Rules 12b-20 and 13a-11. The Commission dismissed allegations that Cheramy had engaged in insider trading of IDB stock.

In the related criminal action brought against them by the United States Attorney's Office for the Central District of California, Sudikoff and Cheramy pled guilty to various crimes in 1999. Sudikoff pled guilty to two counts of securities fraud for insider trading and one count of failing to disclose his IDB stock trades to the Commission. On December 3, 1999, Judge Pregerson sentenced Sudikoff to twelve months incarceration, a $3 million criminal fine, and a period of three years of supervised release. Cheramy pled guilty to one count of securities fraud. On December 16, 1999, Judge Pregerson sentenced Cheramy to three years probation, 500 hours community service and a $250,000 criminal fine.

For further information, see Litigation Release No. 15522 (October 1, 1997).

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 2049 Century Park East, Suite 3400, Los Angeles, California 90067.

On December 10, 2001, I served the foregoing document described as DEFENDANT MICHAEL CROW'S NOTICE OF MOTION AND MOTION TO MODIFY FINAL JUDGMENT OF PERMANENT INJUNCTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 60(b)(5); MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF MICHAEL CROW on the interested parties of record in the action by:

[ ] placing true copies thereof enclosed in sealed envelopes addressed as stated on the attached mailing list.

[X] placing [ ] the original [X] a true copy thereof enclosed in sealed envelopes addressed as follows:

> Tom Zaccaro, Esq.
> Securities and Exchange Commission
> 5670 Wilshire Boulevard, 11th Floor
> Los Angeles, California 90036

[X] **BY MAIL**

[ ] I deposited in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.

[X] I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ ] (STATE) I declare under penalty of perjury under the laws of the State of California.

[X] (FEDERAL) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on December 10, 2001, at Los Angeles, California.

Patricia DuPree

LA890 1202765-2.062446.0011