















ANDY   1/8/02   9:10
3:96-CV-01661   SEC V. CROW
*40*
*OPPM.*

SAMUEL M. FORSTEIN, D.C. Bar # 961912
WM. SMITH GREIG, D.C. Bar # 453443
Securities and Exchange Commission
450 Fifth Street, N.W., Suite 2200
Washington, D.C. 20549-0207
Telephone:     202 / 942-0916 (Mr. Greig)
Facsimile:     202 / 942-9537

Local Counsel:
THOMAS A. ZACCARO, Cal. Bar # 183241
Securities and Exchange Commission
5670 Wilshire Boulevard, 11th Floor
Los Angeles, California 90036-3648
Telephone:     323 / 965-3877
Facsimile:     323 / 965-3908

Counsel for Plaintiff Securities and
Exchange Commission

02 JAN -7 AM 10: 21

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| U.S. SECURITIES AND EXCHANGE COMMISSION,<br><br>            Plaintiff,<br><br>    v.<br><br>MICHAEL CROW and PETER KUEBLER,<br><br>           Defendants. | Case No. 96 CV 1661 W<br><br>Opposition of SEC to Defendant Michael Crow's Motion to Modify Final Judgment of Permanent Injunction Pursuant to Federal Rule of Civil Procedure 60(b)(5)<br><br>Date:  January 22, 2002<br>Time:  10:30 a.m.<br><br>**Oral Argument Not Required** |

## INTRODUCTION

     Defendant Michael Crow ("Crow") has moved this Court for an order "terminating" the permanent officer and director bar to which he consented just three



years and eight months ago. Motion to Modify Final Judgment of Permanent Injunction Pursuant to Federal Rule of Civil Procedure 60(b)(5) ("Defendant's Motion") at 10. The Court should deny Crow's motion because he has failed to meet his burden under FED. R. CIV. P. 60(b)(5) of establishing that, due to a significant change in circumstance or law, prospective application of the bar is no longer equitable.

Crow was the president and chief executive officer of Wilshire Technologies, Inc. ("Wilshire"), a public company located in Carlsbad, California. As detailed below, Crow violated the federal securities laws by causing Wilshire to materially overstate its earnings, to issue materially misleading press releases, and to file materially misleading periodic financial reports with the Commission. Further, Crow engaged in insider trading by selling 75,000 shares of Wilshire stock in November and December 1993, thereby avoiding losses of over $1.2 million.

In April 1998, Crow consented to the entry of an injunction that, *inter alia*, permanently bars him from serving as an officer or director of any public company. Given that Crow acted egregiously and with a high degree of scienter, the permanent officer and director bar was equitable and appropriate. Moreover, Crow consented to the permanent bar, and he should not be permitted to evade its restrictions.

## BACKGROUND

A review of the central facts leading to the permanent officer and director bar will demonstrate the egregious nature of Crow's federal securities violations. The facts summarized below are set forth in full in the First Amended Complaint, filed in this Court on October 31, 1996, and attached as Exhibit A.

Crow is bound by the facts alleged in the First Amended Complaint. In the Consent to Entry of Judgment of Permanent Injunction and Other Relief signed by Crow on March 18, 1998 (the "Consent"; attached as Exhibit C), Crow agreed "not to take any action or permit to be made any public statement denying, directly or indirectly, any allegation in the First Amended Complaint or creating the impression that the First Amended Complaint is without factual basis." Consent at 5 (¶ 12).

I.     The Facts

A.     On Multiple Occasions, Crow Caused Wilshire To Materially Overstate Its Revenues and Earnings.

As its president and chairman, Crow caused Wilshire to materially overstate its revenue and earnings by causing it to recognize revenue on conditional sales of two new and untested products. In perpetrating the scheme, described below, Crow violated the antifraud provisions of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5, the reporting provisions of Section 13(a) of the Exchange Act and Rules 12b-20 and 13a-13, the recordkeeping provisions of Section 13(b)(2)(A) of the Exchange Act and Rule 13b2-1, the internal control provisions of Section 13(b)(2)(B) of the Exchange Act, and the lying-to-the-auditors provision of Rule 13b2-2 under the Exchange Act.

Wilshire developed and marketed medical, clean room and transdermal drug delivery products. First Amended Complaint at 3 (¶ 5). In 1993, Wilshire was developing two new and untested products, TrimPatch and the pipe plug. Id. at 4 (¶ 6). TrimPatch was intended to be an over-the-counter transdermal appetite suppressant. Id. The pipe plug was developed to clean the tubing in factory clean rooms. Id.

Wilshire could not sell TrimPatch in foreign countries without the approval of each foreign government, and Crow knew that no foreign government had approved the sale of TrimPatch during fiscal year 1993. Id. at 4 (¶¶9-10). Yet on multiple occasions Crow caused Wilshire to recognize revenues on sales of TrimPatch that were conditioned, *inter alia*, upon TrimPatch's approval for sale by foreign governments.

Overstatement of Wilshire's second quarter revenue and earnings. In May 1993, Wilshire received a purchase order for 486,000 units of TrimPatch, and it issued a $216,000 invoice for the order. Id. at 5 (¶ 12). The order was conditioned upon Wilshire obtaining the approval of the Mexican and other foreign governments to manufacture, sell, and distribute TrimPatch. Id. at 5 (¶ 13). Wilshire did not ship any TrimPatch in response to this order. Id. at 5 (¶ 12).

In July 1993, however, Crow and Peter F. Kuebler ("Kuebler"), Wilshire's vice president, secretary, and chief financial officer, caused Wilshire to issue a press release and to file with the Commission a Form 10-QSB in which the $216,000 conditional order of TrimPatch was recognized as part of Wilshire's total second quarter 1993 revenue of over $2.5 million. Id. at 5-6 (¶ 15). The recording of revenue from the conditional sale was contrary to Generally Accepted Accounting Principles. Crow knew that the sale was subject to a condition that had not been met, and he also knew, prior to the filing with the Commission, that the potential buyer lacked the funds to complete the purchase. Id. at 6 (¶ 16). By recognizing the conditional sale of TrimPatch, Wilshire exaggerated its second quarter 1993 revenue by 9 percent and its pre-tax earnings by over $131,000, or 47 percent. Id. at 6 (¶ 18).

1    <u>Overstatement of Wilshire's third quarter revenue and earnings</u>. In August 1993,

2    Wilshire received a purchase order for 2.7 million units of TrimPatch. <u>Id</u>. at 7 (¶ 20).

3    The order was conditioned upon the Mexican government's approval of TrimPatch sales.

4    <u>Id</u>. On the last day of Wilshire's 1993 third quarter, Crow caused Wilshire to invoice the

5    purchaser $1,083,600 for TrimPatch, and Crow and Kuebler caused Wilshire to record

6    revenue of $1.1 million. <u>Id</u>. Wilshire retained the TrimPatch in its warehouse and

7    recorded a change in title to the purchaser's name. <u>Id</u>. at 7 (¶ 21).

8         Also in August 1993, Crow ordered Wilshire employees to complete a sale and

9    shipment of pipe plugs by the end of Wilshire's third quarter. When he gave this

10   instruction, Crow knew that manufacturing delays would likely prevent manufacture of

11   the pipe plugs before the end of the third quarter and that the sale was conditional on

12   acceptance of the pipe plugs by the buyer's customer. <u>Id</u>. at 7 (¶ 22). Although Crow

13   and Kuebler knew that Wilshire had not shipped any pipe plugs, they caused Wilshire to

14   record $252,900 in revenue from the conditional sale of the pipe plugs, as of August 31,

15   1993. <u>Id</u>. at 8 (¶ 23).

16        In September 1993, Crow and Kuebler caused Wilshire to issue a press release

17   and to file with the Commission a third quarter 1993 Form 10-QSB that included the

18   revenue from the August conditional sale of TrimPatch and the conditional sale of pipe

19   plugs. By improperly recognizing a combined $1.34 million in revenue from these

20   conditional sales, Wilshire inflated its reported third quarter revenue by over 75 percent.

21   <u>Id</u>. at 9 (¶ 29). Using the improper figures, Wilshire reported pre-tax income of

22   $468,000; if Wilshire had not improperly recognized the revenue from the conditional

23

24

25

| | |
|---|---|
| 1 | sales, it would have incurred a pre-tax loss for its third quarter of approximately |
| 2 | $370,000. Id. |
| 3 | Wilshire's misleading press releases. Crow caused Wilshire to issue a series of |
| 4 | misleading press releases in September, November, and December 1993. These press |
| 5 | releases variously misrepresented purported shipments of TrimPatch, misrepresented a |
| 6 | purported "contractual backlog" of TrimPatch units to be sold, overstated expected |
| 7 | earnings, and falsely reported governmental approvals of the sale of TrimPatch. Id. at 9- |
| 8 | 11 (¶¶ 30-39). |
| 9 | The conditional November 1993 sale of TrimPatch. In November 1993, Wilshire |
| 10 | recorded $604,800 from a third conditional sale of unshipped TrimPatch. Id. at 12 (¶ 41). |
| 11 | Crow required the buyer to state the condition – approval of the Brazilian government for |
| 12 | the sale of Trimpatch – on a separate sheet of paper as an addendum. Id. at 12 (¶ 42). |
| 13 | Crow and Kuebler never informed Wilshire's auditor of the addendum, despite the advice |
| 14 | of Wilshire's counsel. Id. at 12-13 (¶ 45). |
| 15 | The second conditional sale of pipe plugs. Crow and Kuebler caused Wilshire to |
| 16 | record, as of November 30, 1993, $1 million in revenue based upon a purported purchase |
| 17 | order for pipe plugs. Id. at 15 (¶ 60). Crow and Kuebler did not disclose to Wilshire's |
| 18 | auditor the conditional nature of the sale. Id. at 16 (¶ 64). |
| 19 | Recording of disputed claim against supplier. At the end of 1993, Wilshire |
| 20 | asserted a claim against Time Release Sciences, Inc. ("TRS"), for $1.9 million on the |
| 21 | ground that TRS's product was defective. Id. at 14 (¶ 53). Crow and Kuebler caused |
| 22 | Wilshire to reduce its "cost of goods sold" account by $1.9 million, the amount of the |
| 23 | contested claim against TRS. Id. at 14 (¶ 54). This improper accounting maneuver |
| 24 | |
| 25 | |

6

increased Wilshire's 1993 pre-tax earnings by nearly $1 million. Id. But Crow was on the board of TRS throughout 1993, and he had TRS financial statements showing that TRS could not pay a $1 million claim. Id. at 14 (¶ 55). Crow and Kuebler failed to disclose in Wilshire's 1993 earnings statement that Wilshire's earning could be affected by $1 million, given the contested and likely uncollectible claim against TRS. Id. at 15 (¶ 59).

Overstatement of Wilshire's fourth quarter and fiscal 1993 revenue and earnings. In January 1994, Crow and Kuebler caused Wilshire to issue a press release that reported fourth quarter 1993 pre-tax earnings of $1,066,000. In fact, Wilshire had a fourth quarter loss of $4.9 million. Thus, the press release overstated Wilshire's fourth quarter pre-tax earnings by $6 million. Id. at 16 (¶ 65). The press release also proclaimed pre-tax earnings for fiscal 1993 of over $2.1 million -- $.54 per share -- and revenues of $11 million. Id. at 16 (¶ 66). Crow and Kuebler knew that these figures were materially false and misleading at the time the press release was issued. Id. at 17 (¶ 66). (Also in January 1994, Wilshire paid Crow a performance bonus of $50,000 based on Wilshire's fiscal 1993 performance. The bonus was based on revenue and earnings statements that Crow knew were false. Id. at 17 (¶ 69).)

In sum, on multiple occasions in 1993 and 1994, Crow caused Wilshire to materially overstate its revenues and earnings in both press releases and filings with the Commission.

B.    Crow Engaged in Insider Trading.

In addition to causing Wilshire to materially overstate its revenues and earnings, Crow engaged in insider trading in Wilshire's stock in violation of the antifraud

7

1   provisions of Section 17(a) of the Securities Act of 1933, Section 10(b) of the Exchange

2   Act, and Rule 10b-5.

3       Between November 8, 1993 and December 5, 1993, Crow sold 75,000 shares of

4   Wilshire stock in the open market for approximately $1.4 million. Id. at 17 (¶ 70).

5   Crow, who knew Wilshire's true financial condition, sold his Wilshire shares in advance

6   of the public disclosure of Wilshire's actual financial condition and thereby avoided

7   losses of almost $1.2 million. Id. When he sold his stock, Crow knew that Wilshire had

8   materially overstated its earnings in press releases and Commission filings and had made

9   false statements concerning sales and regulatory approvals of TrimPatch in Wilshire's

10  press releases. Id. at 18 (¶ 71).

11      In March 1994, the American Stock Exchange suspended trading in Wilshire

12  stock, and Wilshire reported a $6.5 million reduction of its fiscal 1993 net earnings,

13  resulting in a net loss of $4.5 million. Id. at 18 (¶ 74). Following Wilshire's restatement

14  of its financial condition and its filing of its fiscal 1993 Form 10-KSB, trading in

15  Wilshire stock resumed on June 28, 1994, and Wilshire's stock price plummeted to

16  $2.625 per share. Id. at 19 (¶ 75). When Crow sold his 75,000 shares of Wilshire stock

17  in November and December 1993, it was for prices ranging from $16.59 to $20.12 per

18  share. Id. at 18 (¶ 72). Through his insider trading, Crow had avoided losses of

19  approximately $1,198,446. Id. at 19 (¶ 76).

20      Wilshire announced on March 28, 1994 that it had terminated Crow. Id. at 18 (¶

21  74).

22

23

24

25

8

II.    <u>The Proceedings Before This Court</u>

A.    After Invoking the Fifth Amendment, Crow Consented to the
Entry of a Permanent Officer and Director Bar.

In his Answer to the First Amended Complaint, Crow "generally and specifically assert[ed] his privilege against self-incrimination" under the Fifth Amendment "[w]ith respect to each and every allegation contained in the SEC's Complaint." Answer of Defendant Michael W. Crow to the First Amended Complaint at 1 (attached as Exhibit B). He asked the court to deny the Commission's request for a permanent obey the law injunction, a permanent officer and director bar, and a disgorgement order. <u>Id</u>.

On March 18, 1998, Crow signed the Consent to Entry of Judgment of Permanent Injunction and Other Relief (attached as Exhibit C), in which he agreed to a permanent officer and director bar. Consent at 2 (¶ 7).

On April 20, 1998, the Honorable Edward J. Schwartz, United States District Judge for the Southern District of California, entered a judgment of permanent injunction and other relief against Crow. (A copy of the judgment is attached as Exhibit D.) The judgment enjoins Crow from violating the insider trading, reporting, recordkeeping, internal control, and lying-to-an-auditor provisions of the securities laws. Specifically, the judgment permanently enjoins Crow from future violations of Section 17(a) of the Securities Act of 1933; Sections 10(b), 13(a), 13(b)(2)(A) and 13(b)(2)(B) of the Securities Exchange Act of 1934; and Rules 10b-5, 12b-20, 13a-13, 13b2-1 and 13b2-2. The judgment further ordered Crow to pay disgorgement of $1,248,444 plus prejudgment

9

1  interest of $225,773.[1] Finally, the judgment permanently bars Crow from serving as an

2  officer or director of a reporting company.

3       **B.**     <u>Crow's Motion to Terminate the Permanent Officer and Director Bar.</u>

4       On November 5, 2001, Crow filed his Motion to Modify Final Judgment of

5  Permanent Injunction Pursuant to Federal Rule of Civil Procedure 60(b)(5) ("Defendant's

6  Motion") along with his Declaration of Michael Crow ("Crow Declaration"). Crow

7  asserts two purported "equitable grounds" for terminating the permanent bar to which he

8  consented just three years and eight months ago.

9       As the first ground, Crow, citing only two unreported cases, asserts that there has

10  been a "change in the law [that] is extremely relevant" in that "the SEC and the courts

11  have recognized that a permanent bar order is not a mandatory remedy." Defendant's

12  Motion at 9.

13       As the second ground, Crow alleges the existence of "adverse unforeseen

14  consequences from the officer and director bar that could not have been anticipated by

15  Crow." Defendant's Motion at 5. According to Crow, he is currently the principal

16  owner, chairman, and chief executive officer of Zip Direct (Crow Declaration at 3 (¶ 7)),

17  which is a "full service design, print, mail, data processing and presort company" that has

18  "over 300 employees and 2000 clients." Id. Crow alleges that some prospective clients,

19  investors, and lenders — Crow does not identify them — are reluctant or unwilling to do

20

21  _____

    [1]     The Court relieved Crow of the requirement to pay these amounts because Crow

22         settled a related class action lawsuit, <u>In re Wilshire Technologies Securities</u>

       <u>Litigation</u>, U.S. District Court for the Southern District of California, File No. 94-

23         0400-B (AJB), by surrendering 800,000 shares of Advanced Materials Group,

       Inc., the market value of which exceeded the amount to be disgorged and the

24         prejudgment interest.

25

                              96 CV 1661 W

business with Zip Direct because of Crow's officer and director bar. Id. at ¶ 8. Crow

alleges that this is an "unintended consequence" of the permanent bar. Id.

As demonstrated below, Crow's arguments, unsupported by facts or legal

authority, are without merit.

**ARGUMENT**

Permanent officer-and-director bar orders are regularly imposed by consent

decree. SEC v. Posner, 16 F.3d 520, 522 (2nd Cir. 1994). They are particularly

appropriate where, as here, the defendant engaged in egregious acts with a high degree of

scienter. Crow consented to the permanent bar, and he must abide by it.

The Ninth Circuit Court of Appeals has recently held that "in order to grant a

Rule 60(b)(5) motion to modify a court order, a district court must find 'a significant

change either in factual conditions or in law.' " SEC v. Coldicutt, 258 F.3d 939, 942 (9th

Cir. 2001), quoting Rufo v. Inmates of Suffolk County Jail, 502 U.S. 367, 384 (1992).

Because Crow cannot show any change in fact or law – let alone the required "significant

change" – the court should deny his motion to terminate the permanent officer and

director bar. The fact that, three years and eight months after having consented to the

permanent bar, Crow now claims to be inconvenienced by it is no basis for its

termination.

I.     Crow Has Failed to Show Any Change in Law Regarding Officer
       and Director Bars.

Contrary to Crow's arguments, permanent officer-and-director bar orders, as the

Second Circuit has stated, "are imposed routinely by consent decree." SEC v. Posner, 16

F.3d 520, 522 (2nd Cir. 1994). The Commission has obtained permanent officer and

director bars in numerous cases, such as Crow's, involving a high degree of scienter, egregious acts, or previous violations of the federal securities laws. See, e.g., SEC v. First Pacific Bancorp, 142 F.3d 1186, 1192-94 (9th Cir. 1998) (imposing permanent bar where defendant, as chairman, chief executive officer, and corporate counsel of a bank holding company, conducted a fraudulent issuance of securities to put off a bank failure and to allow him to "pay[ ] himself hundreds of thousands of dollars in salaries, commissions, and consulting, management and legal fees"); SEC v. Drexel Burnham Lambert, Inc., 837 F. Supp. 587, 606 (S.D.N.Y. 1993) (imposing permanent bar where defendants had "repeatedly abused their positions in public companies, engaged in self-dealing, enriched themselves at the expense of public shareholders, and generally conducted themselves in ways that are the antithesis of what one expects of a corporate fiduciary"), aff'd, 16 F.3d 520 (2d Cir. 1994); SEC v. DiMauro, Litigation Rel. No. 15874 (Sept. 9, 1998) (permanent officer and director bar consented to in connection with fraud in a microcap company where officers misappropriated funds and prepared false disclosure statements); SEC v. Peltz, Litigation Rel. No. 15657 (March 3, 1998) (permanent officer and director bar consented to by CEO and chairman of corporation who materially overstated corporation's inventory and net income, misappropriated corporate funds to pay personal expenses, and took unrecorded cash from the corporation's daily cash receipts); SEC v. Faust, Litigation Rel. No. 15624 (Jan. 22, 1998) (permanent officer and director bar consented to by chief operating officer and director of corporation who directed falsification of documents to increase revenues, traded company stock using nonpublic insider information, and pled guilty to one count of mail fraud).

1        Legislative history confirms that permanent officer and director bars are

2 appropriate penalties for egregious conduct. See S. Rep. No. 337, 101st Cong., 2d Sess.

3 21 (1990) ("The court may tailor the bar to the particular facts and circumstances and

4 impose the bar on a temporary or permanent basis. A permanent bar might be

5 appropriate if the violation were particularly egregious or the violator was a recidivist.");

6 see also S. Rep. No. 337, 101st Cong., 2d Sess. 21 (1990) (an officer and director bar

7 "represents a potentially severe sanction for individual misconduct, [but] persons who

8 have demonstrated a blatant disregard for the requirements of the Federal securities laws

9 should not be placed in a position of trust with a publicly held corporation"); H. Rep. No.

10 616, 101st Cong., 2d Sess. (1990) (including letter to Representative Dingell from Daniel

11 L. Goelzer, General Counsel of the Commission, stating that Commission's proposed

12 revisions were to "prohibit individuals who have committed egregious violations of

13 Section 17(a)(1) of the Securities Act of 1933 or Section 10(b) of the Exchange Act from

14 serving as officers or directors of any reporting company").

15        Crow argues that there has occurred a change in the law: "a recent court decision

16 has held that a permanent officer and director bar is not appropriate in all cases,"

17 Defendant's Motion at 5-6, and "the SEC and the courts have recognized that a

18 permanent bar order is not a mandatory remedy," Defendant's Motion at 9. The idea that

19 permanent bars are not mandatory or appropriate in all cases is a legal truism. It is not a

20 change in the law; it is and ever has been the law. Tellingly, Crow does not cite a single

21 case, prior to the alleged change in the law, in which a court held that a permanent bar

22 order is a mandatory remedy appropriate in all cases.

23

24

25

1    The two cases Crow cites, both unreported, are inapposite.  SEC v. McCaskey,

2    2001 U.S. Dist. LEXIS 13571 (S.D.N.Y. Sept. 6, 2001), did not involve a consent to or a

3    motion for dissolution of a permanent bar.  Instead, the court, over the defendant's

4    objections, imposed a six-year officer and director bar.  In SEC v. Sudikoff, Litigation

5    Rel. No. 16663 (Aug. 28, 2000), the only other case cited by Crow, one defendant agreed

6    to an officer and director bar of ten years, another to a bar of twelve years.  Crow, in

7    contrast, is seeking relief from the permanent bar to which he consented only three years

8    and eight months ago.  Neither McCaskey nor Sudikoff involved a FED. R. CIV. P.

9    60(b)(5) motion for termination of a permanent bar, and neither case supports Crow's

10    argument that there has been "a change in the law."  In sum, there has been no change in

11    the law, much less the "significant change" required under Coldicutt.

12        The permanent officer and director bar to which Crow consented is firmly in line

13    with established case law and with the legislative intent of the federal securities laws.

14    Crow consented to the permanent bar, and he must abide by its terms.

15        B.    Crow Has Failed to Show Any Change in Factual Conditions.

16        Crow asserts that "adverse unforeseen consequences from the officer and director

17    bar that could not have been anticipated by Crow" necessitate termination of the officer

18    and director bar.  Defendant's Motion at 5.  Specifically, Crow alleges that some

19    potential clients, business partners, and investors have stated that they are unwilling to do

20    business with his company, Zip Direct, because of Crow's officer and director bar.

21    Defendant's Motion at 6-7; Crow Declaration at 3 (¶ 8).  Crow makes only the most

22    general allegations.  Neither in his Motion nor in his Declaration does Crow provide any

23    supporting details in the form of names, dates, potential dollar amounts, or other specific

24

25                                      14

1   and pertinent information. The alleged statements of third parties reluctant to do business

2   with Crow or Zip Direct are unsupported hearsay.

3       Even if third parties have told Crow that they are reluctant to do business with

4   him, this hesitation was clearly foreseeable by Crow at the time he agreed to the

5   permanent bar. Some contraction of business opportunities is a natural and expected

6   consequence of a permanent officer and director bar arising from multiple violations of

7   federal securities laws, particularly where the egregious acts leading to the bar occurred

8   so recently. Indeed, it is likely not the bar that turns away potential business (assuming

9   for argument's sake that some business is being turned away), it is the fact of Crow's

10  egregious conduct that resulted in the bar. In any event, the bar has not prevented Crow

11  from owning and serving as chairman and chief executive officer of Zip Direct, a large

12  and apparently successful private company, one with over 300 employees and 2000

13  clients. Crow Decl., ¶ 7.[2]

14      In sum, Crow has not shown <u>any</u> change in factual circumstances, let alone the

15  "significant change" required to modify a court order under the Ninth Circuit's holding in

16  <u>Coldicutt</u>. The factual circumstances that he alleges inconvenience him — some

17

---

[2]   Crow argues that although he did not enter into the Consent's permanent bar until
18    1998, he "effectively" could not serve as an officer or director since 1994, when
      the Commission began its investigation. Defendant's Motion at 6. Of course, the
19    "effective" bar from 1994 to 1998, if such existed, was either self-imposed or
      imposed by prospective employers. It was not a bar imposed by the Commission,
20    and it has no bearing on the Consent, in which Crow expressly agreed to a
      permanent bar. Crow can offer no case law on the relevance of any "effective"
21    bar prior to the 1998 Consent, and in any case provides no evidence that such an
      "effective" bar existed. The Crow Declaration states only that due to the
22    "investigation and subsequent civil action, during the period from approximately
      November 1994 onward [Crow] was not associated with Wilshire as an officer
23    and director." Crow Declaration at 2 (¶ 6). (In fact, as noted above, Wilshire
      announced its termination of Crow in March 1994. First Amended Complaint at
24    18 (¶ 74).)

25

individuals and companies are allegedly reluctant to do business with a person subject to a permanent officer and director bar arising from multiple violations of federal securities laws — were entirely foreseeable when he consented to the permanent bar. Moreover, Crow's vaguely alleged inconvenience is no ground for terminating the permanent bar to which he consented. The Ninth Circuit has affirmed that "[r]elief from a court order should not be granted ... simply because a party finds 'it is no longer convenient to live with the terms' of the order." Coldicutt, 258 F.3d at 942, quoting Rufo, 502 U.S. at 383.

———

# CONCLUSION

The court should deny Crow's motion to terminate, after only three years and eight months, the permanent officer and director bar to which he consented. Crow has failed to establish that there has been any change in fact or law, much less the significant change required under Fed.R.Civ.P. 60(b)(5), that warrants a modification of the permanent bar.

Respectfully submitted,

THOMAS A. ZACCARO, Cal. Bar # 183241
Securities and Exchange Commission
5670 Wilshire Boulevard, 11th Floor
Los Angeles, California 90036-3648
Telephone:    323 / 965-3877
Facsimile:    323 / 965-3908

SAMUEL FORSTEIN, D.C. Bar # 961912
WM. SMITH GREIG, D.C. Bar # 453443
Securities and Exchange Commission
450 Fifth Street, N.W.
Washington, D.C. 20459-0207
Telephone:    202 / 942-0916 (Mr. Greig)
Facsimile:    202 / 942-9537

Dated: January 4, 2001

96 1661 W

Elaine M. Cacheris (Cal. Bar No. 101605)
Sandra J. Harris (Cal. Bar No. 134153)
James A. Howell (Cal. Bar No. 92721)
Roberto A. Tercero (Cal. Bar No. 143760)

Attorneys for Plaintiff
Securities and Exchange Commission
5670 Wilshire Blvd., 11th Floor
Los Angeles, CA   90036
Telephone:  (213) 965-3998



UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, :<br><br>                    Plaintiff, :<br><br>      v. :<br><br>MICHAEL W. CROW and :<br>PETER F. KUEBLER, :<br><br>             Defendants. : | Civil Action<br>No. 96-1661 S CM<br><br>FIRST AMENDED COMPLAINT |

Plaintiff Securities and Exchange Commission ("Commission"),

alleges:

### SUMMARY

1.    This is an action for fraud involving former officers

of Wilshire Technologies, Inc. ("Wilshire"), Michael W. Crow and

Peter F. Kuebler.  During their employment with Wilshire, a

public company, Crow and Kuebler each caused Wilshire to

materially overstate its earnings, to issue materially misleading

press releases and to file materially misleading periodic

financial reports with the Commission.  Further, Crow, in

November and December 1993, while in possession of material, non-

1  public information regarding Wilshire's overstatement of
2  earnings, sold Wilshire shares and thus avoided losses that he
3  would have incurred if the market had received accurate
4  information about Wilshire. The Commission seeks relief for
5  Crow's violations of Section 17(a) of the Securities Act of 1933
6  ("Securities Act"), and for Crow's and Kuebler's violations of
7  Sections 10(b), 13(a), and 13(b)(2)(A) & (B) of the Securities
8  Exchange Act of 1934 ("Exchange Act"), and Rules 10b-5, 12b-20,
9  13a-13, 13b2-1 and 13b2-2. Specifically, the Commission requests
10 that this Court permanently enjoin both Crow and Kuebler from any
11 further violations of the securities laws, prohibit Crow from
12 serving as an officer or director of any corporation that has
13 securities registered with the Commission or that is required to
14 file reports with the Commission, and order Crow to disgorge all
15 benefits obtained by virtue of his illegal conduct, together with
16 prejudgment interest.

17                    **JURISDICTION AND VENUE**

18     2.   This Court has jurisdiction over this action pursuant
19 to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and
20 Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C.
21 §§ 78u(d), 78u(e) and 78aa]. Crow and Kuebler have each,
22 directly or indirectly, made use of the means or
23 instrumentalities of interstate commerce, of the mails, and/or of
24 the facilities of a national securities exchange in connection
25 with the securities transactions described in this First Amended
26 Complaint.

27  *

28  *                            2

## THE DEFENDANTS

3.  <u>Michael W. Crow</u> ("Crow"), age 36, was President and Chairman of the Board of Wilshire Technologies, Inc. from November 1990 through March 1994 and was a Wilshire director from 1990 through September 1994.  Crow was also an officer and director of another publicly traded company, Advanced Materials Group, Inc.  He is currently chief executive officer of a closely-held corporation and resides in San Diego County, California.  Prior to the events described below, Crow was associated with a registered broker-dealer.  In a registration statement filed with the Commission in November 1992, Crow stated that he was a certified public accountant.  Crow is licensed by the State of California as a certified public accountant, but is currently on inactive status.

4.  <u>Peter F. Kuebler</u> ("Kuebler"), age 40, was Vice President, Secretary and chief financial officer of Wilshire Technologies, Inc. from November 1992 through March 1994. Kuebler resides in San Diego County, California.  Kuebler is licensed by the State of California as a certified public accountant and is on active status.

## THE ISSUER

5.  <u>Wilshire Technologies, Inc.</u> ("Wilshire") developed, manufactured and marketed medical, clean room and transdermal drug delivery products.  The company is based in Carlsbad, California.  Wilshire's common stock is registered with the Commission pursuant to Section 12(g) of the Exchange Act and is traded on the American Stock Exchange.

*

3

## THE FRAUDULENT SCHEME

6.   In 1993, Wilshire was engaged in the development of two new untested products, TrimPatch and the pipe plug.  TrimPatch was a product designed as an over-the-counter transdermal appetite suppressant.  Wilshire intended to manufacture TrimPatch in Mexico for distribution and sale outside the United States. The pipe plug was a product designed to clean tubing in clean rooms in manufacturing facilities.

7.   In February 1993, Wilshire entered into a joint venture with Intelligent Pharmaceuticals Corp. ("IPC") to develop and market TrimPatch.

8.   In mid-1993, Wilshire and IPC entered into marketing agreements with two master distributors, B&R Consulting Limited, Inc. ("B&R"), and Dagal, Inc. ("Dagal").  Under these agreements, B&R and Dagal were to obtain the necessary foreign regulatory approvals to sell TrimPatch internationally.  Wilshire and IPC granted Dagal the right to market TrimPatch in Mexico and granted B&R marketing rights in other countries, excluding Mexico.

9.   Wilshire could not sell TrimPatch in Mexico and in other foreign countries without the approval of the product by each foreign government.  Wilshire did not have the approval of any foreign government to sell TrimPatch at any time during Wilshire's fiscal year 1993.

10.  At all times material to this action, Defendant Crow knew that Wilshire could not sell TrimPatch in foreign countries without the approval of the product by each foreign government and that no foreign government had approved the sale of TrimPatch.

11. From at least August 31, 1993 onward, Defendant Kuebler knew, or through recklessness failed to know, that Wilshire could not sell TrimPatch in foreign countries without the approval of the product by each foreign government and that no foreign government had approved the sale of TrimPatch.

### Overstatement of Wilshire's Second Quarter Revenue and Earnings

12. On May 28, 1993, B&R issued a purchase order to Wilshire for 486,000 units of TrimPatch, and Wilshire issued a $216,000 invoice to B&R for the TrimPatch order. This order represented Wilshire's first TrimPatch sale. Wilshire did not ship any TrimPatch to B&R on this order, but instead held the product at its warehouse.

13. B&R conditioned its May 28, 1993 order of TrimPatch on Wilshire obtaining approval of Mexico and other foreign governments to manufacture, distribute and sell the product and on B&R being able to secure an insured, air-conditioned warehouse for storage of the product.

14. On May 28, 1993, Wilshire did not have approval of Mexico or any other foreign government for the manufacture, distribution and sale of TrimPatch.

15. Crow and Kuebler each caused Wilshire to issue a press release on July 2, 1993, and to file with the Commission a Form 10-QSB on July 15, 1993, in which Wilshire reported second quarter 1993 revenue of over $2.5 million and pre-tax earnings of $413,000. Crow and Kuebler each caused Wilshire to include in the calculation of these figures a recognition of $216,000 in

*

5

1  revenue from the conditional sale of TrimPatch to B&R as of
2  May 28, 1993.

3     16.  The recording of revenue from Wilshire's conditional
4  sale to B&R was contrary to Generally Accepted Accounting
5  Principles.  At the time of Wilshire's press release and
6  Commission filing described above, Crow knew that the sale to B&R
7  was subject to a condition which Wilshire had not met.  Crow also
8  knew, prior to the filing with the Commission, that B&R did not
9  have funds to complete the purchase.  As an accountant, Crow knew
10 or was reckless in not ascertaining that Wilshire's recording of
11 revenue from the conditional sale to B&R would cause Wilshire to
12 materially overstate its revenue and earnings.

13     17.  At the time of Wilshire's press release and Commission
14 filing described above, Kuebler knew, or through recklessness
15 failed to know, that Wilshire's TrimPatch sale to B&R was
16 conditional.  At the same time, Kuebler knew that B&R had not
17 paid Wilshire's invoice for the TrimPatch sale, that B&R did not
18 have funds to complete the purchase and that B&R took the
19 position that it did not owe Wilshire any money for TrimPatch.
20 As an accountant and Wilshire's chief financial officer, Kuebler
21 knew or was reckless in not ascertaining that Wilshire's
22 recording of revenue from the conditional sale to B&R would cause
23 Wilshire to materially overstate its revenue and earnings.

24     18.  As a result of recognizing revenue on the conditional
25 sale of TrimPatch to B&R, Wilshire overstated its second quarter
26 revenue by $216,000, or 9 percent, and its pre-tax earnings by
27 over $131,000, or 47 percent.

28  *

6

19. In August 1993, Crow instructed Wilshire employees and IPC's president to obtain an order for TrimPatch from Dagal before the end of Wilshire's third quarter.

20. On August 30, 1993, Dagal issued a purchase order to Wilshire for 2.7 million units of TrimPatch. Dagal's August 30, 1993 order for TrimPatch was conditioned on the Mexican government approving TrimPatch for sale. Dagal's August 30, 1993 order was further conditioned on Dagal receiving payment from its customer.

21. On August 31, 1993, the last day of Wilshire's third quarter, Crow caused Wilshire to invoice Dagal $1,083,600 for TrimPatch and Crow and Kuebler each caused Wilshire to record $1.1 million in revenue on its books. Wilshire did not ship TrimPatch to Dagal but, on August 31, 1993, retained TrimPatch in its warehouse and recorded a change of title on TrimPatch to Dagal.

22. In early August 1993, Crow instructed Wilshire employees to complete Wilshire's first sale and shipment of pipe plugs to a division of Baxter Healthcare Corp. ("Baxter"), by the end of Wilshire's third quarter. At the time Crow gave this instruction, Crow knew that, due to manufacturing delays, Wilshire probably could not complete manufacturing the pipe plugs before the end of the third quarter and that Wilshire's sale of pipe plugs to Baxter was conditional on Baxter's customer's acceptance of the pipe plugs.

\*

23.   Crow and Kuebler each caused Wilshire to record on its
books as of August 31, 1993, $252,900 in revenue from a sale of
pipe plugs to Baxter.  At the time Wilshire recorded this
revenue, Crow and Kuebler each knew that Wilshire had not shipped
any pipe plugs to Baxter.

24.   On September 2, 1993, Baxter sent Wilshire a purchase
order for pipe plugs that stated the order was conditional on
Baxter's customer's acceptance of the product.  On September 3,
1993, Wilshire invoiced Baxter $252,900 for the pipe plugs.
Wilshire never delivered pipe plugs to Baxter based on this
order.

25.   Crow and Kuebler each caused Wilshire to issue a press
release dated September 10, 1993, and to file with the Commission
a third quarter 1993 Form 10-QSB on September 27, 1993, in which
Wilshire reported revenues of almost $3,083,000 and quarterly
pre-tax earnings of $468,000, or $.11 per share.  In reporting
these figures, Wilshire included the revenue from the conditional
sale of TrimPatch to Dagal and the conditional sale of pipe plugs
to Baxter.

26.   The recording of revenue from Wilshire's conditional
sale of TrimPatch to Dagal was contrary to Generally Accepted
Accounting Principles.  At the time of Wilshire's press release
and Commission filing described above, Crow knew that the sale to
Dagal was conditional and that recognition of revenue from the
conditional sale to Dagal would cause Wilshire to materially
overstate its revenue and earnings.

27.   Kuebler, prior to the issuance of the press release and
the filing with the Commission, knew that Wilshire had not

1  received approval to sell TrimPatch and knew, or through
2  recklessness failed to know, that the sale to Dagal was
3  conditional.  Kuebler did not know, prior to the issuance of the
4  press release and the filing with the Commission, whether Dagal
5  could pay for the TrimPatch.  As an accountant and Wilshire's
6  chief financial officer, Kuebler knew or was reckless in not
7  ascertaining that Wilshire's recording of revenue from the
8  conditional sale to Dagal would cause Wilshire to materially
9  overstate its revenue and earnings.

10      28.  The recording of revenue from Wilshire's conditional
11  sale of pipe plugs to Baxter was contrary to Generally Accepted
12  Accounting Principles.  At the time of Wilshire's press release
13  and Commission filing described above, Crow and Kuebler each knew
14  that the sale to Baxter was conditional and that recognition of
15  revenue from the conditional sale to Baxter would cause Wilshire
16  to materially overstate its revenue and earnings.

17      29.  As a result of improperly recognizing a combined $1.34
18  million in revenue from conditional sales of TrimPatch and pipe
19  plugs, Wilshire overstated its reported third quarter revenue by
20  over 75 percent.  Without recognition of revenue from these
21  purported sales, Wilshire would have incurred a pre-tax loss for
22  its third quarter of approximately $370,000, approximately
23  $840,000 less than the reported pre-tax income of $468,000.

24              Wilshire's September 10, 1993 Press Release

25      30.  Crow caused Wilshire to misrepresent in Wilshire's
26  September 10, 1993 press release that Wilshire had "shipped" 2.7
27  million units of TrimPatch to a distributor in Mexico; Wilshire
28  had a "contractual backlog" of 23 million TrimPatch units to be

1  shipped over the following 12 months; and Wilshire expected
2  "additional" approvals for TrimPatch in the next 30 days.

3  31.  Wilshire's September 10, 1993 representation that it
4  had "shipped" 2.7 million units of TrimPatch referred to
5  Wilshire's conditional sale to Dagal for TrimPatch.  Wilshire
6  never shipped TrimPatch to Dagal, and the Mexican government
7  never approved TrimPatch for sale.

8  32.  At the time of Wilshire's September 10, 1993 press
9  release, Wilshire did not have contracts to sell 23 million
10  TrimPatch units and, therefore, did not have a "contractual
11  backlog," as described in the release.

12  33.  At the time of Wilshire's September 10, 1993 press
13  release, no foreign government had approved TrimPatch for
14  manufacture, distribution or sale.

15  34.  Crow knew or was reckless in failing to ascertain that
16  these representations in the September 10, 1993 press release
17  were false or misleading.  After September 10, 1993, Crow
18  received additional information from Wilshire employees that
19  these representations were false.  Crow did not thereafter issue
20  a press release to provide accurate information on these
21  subjects.

22              Wilshire's November 12, 1993 Press Release

23  35.  On November 12, 1993, Crow prepared and caused Wilshire
24  to issue a press release stating:  "We believe that the analysts
25  estimate of $.55 and $1.80 [earnings per share] for fiscal
26  [years] 1993 and 1994 are still reasonable."

27  36.  Crow knew on November 12, 1993 that Wilshire's
28  previously announced second and third quarter reported earnings

were overstated because they improperly included conditional
sales of TrimPatch and the pipe plug.  In addition, Crow knew at
that time that the Wilshire division which manufactured the pipe
plug was expected to be approximately $1 million below its sales
estimates for the fiscal year.

### Wilshire's December 22, 1993 Press Release

37.  On December 22, 1993, Crow prepared and caused Wilshire
to issue a press release that contained the following materially
inaccurate statements:  Wilshire had received approval from the
government of Mexico to sell TrimPatch freely throughout Latin
America; and Wilshire had received approval and registered to
sell TrimPatch in Hong Kong and Taiwan.

38.  On December 22, 1993, Crow knew that the government of
Mexico had not approved the sale of TrimPatch; that many issues
needed to be resolved before Mexico would approve TrimPatch; and
that IPC had reported that sales of TrimPatch were at a
standstill until approval by Mexico was obtained.

39.  After December 22, 1993, Crow received information from
Wilshire employees that Wilshire did not have approval to
manufacture, distribute or sell TrimPatch from the governments of
Mexico, Hong Kong, and Taiwan, and that approval in Taiwan would
take from nine to 12 months to obtain.  Despite this knowledge,
Crow did not issue a press release to provide accurate
information on this subject.

### The November 1993 Sale of TrimPatch to B&R

40.  In November 1993, Crow directed Wilshire employees to
make a large sale of TrimPatch to B&R.  Accordingly, Wilshire
employees negotiated an agreement with B&R in which B&R agreed to

11

1  issue a purchase order for TrimPatch on the condition that the
2  government of Brazil approve sales of TrimPatch.

3      41.  On November 29, 1993, Wilshire invoiced B&R for
4  $604,800, and recorded $604,800 in revenue on its books.
5  Wilshire did not ship TrimPatch to B&R pursuant to this order,
6  but held the product at a warehouse paid for by Wilshire.

7      42.  When Crow was advised that B&R agreed to place a
8  conditional order for TrimPatch, Crow instructed an employee to
9  have B&R state the condition on a separate sheet of paper.  B&R
10  agreed to place the condition on an addendum separate from its
11  purchase order, and the employee informed both Crow and Kuebler
12  of B&R's agreement to place the condition of the purchase order
13  on a separate addendum.

14      43.  On November 24, 1993, B&R issued a purchase order for
15  $604,800 of TrimPatch that referenced an addendum, also dated
16  November 24, 1993.  B&R stated in the addendum that its purchase
17  order was conditioned on Brazil's approving TrimPatch for sale
18  and B&R's receiving payment from its customer.

19      44.  In December 1993, B&R informed Wilshire that it did not
20  consider Wilshire's invoice valid because B&R's order was
21  conditional on events that had not yet occurred.  B&R told
22  Kuebler during the first week of December 1993 that B&R's
23  purchase order was conditional, that B&R had not taken possession
24  of the TrimPatch and that B&R did not owe Wilshire any money.

25      45.  Wilshire employees consulted legal counsel concerning
26  the November 1993 sale of TrimPatch to B&R.  Wilshire's counsel
27  orally advised Kuebler and prepared a memorandum dated February
28  24, 1994, addressed to Crow and Kuebler, advising that the

transaction appeared to be a consignment and not a sale. The counsel's memorandum further advised Wilshire to provide B&R's purchase order addendum to the company's auditor. Although the auditor's representatives met with Crow, Kuebler and other Wilshire employees on a variety of issues, including the sales to B&R, neither Crow nor Kuebler ever informed the auditor about the addendum or conditions to the sale.

### The November 1993 Sale of Wilshire's OEM Medical Product Unit

46. In November 1993, Crow was chief executive officer of both Wilshire and Advanced Materials Group, Inc. ("AMG"). Crow owned more than 50 percent of AMG.

47. In November 1993, Wilshire Advanced Materials ("WAM"), was a wholly owned subsidiary of AMG.

48. On November 23, 1993, WAM entered into an agreement to purchase Wilshire's OEM Medical Product Unit ("OEM") for $2.3 million. Pursuant to the purchase agreement, WAM agreed to pay the purchase price by issuing a $1.55 million promissory note due on January 7, 1994, and increasing by $750,000 the amount due under an existing $1 million note issued by WAM to Wilshire which was due in 1997.

49. Wilshire's auditor repeatedly informed Kuebler that the OEM sale to WAM was a large, leveraged related-party transaction and that Wilshire could only recognize a gain to the extent WAM actually paid Wilshire cash. Crow and Kuebler were each aware that WAM had not paid Wilshire any cash and that Wilshire needed to receive cash in order to recognize any gain.

*

13

1     50.   Nevertheless, on November 23, 1993, Crow and Kuebler

2   each caused Wilshire to record a $1.7 million gain on the sale of

3   OEM to WAM.

4     51.   WAM did not pay Wilshire any of the money it owed under

5   the $1.55 million promissory note by the January 7, 1994 due

6   date.

7             Recording of Disputed Claim Against Supplier

8     52.   During 1993, Wilshire purchased approximately $1.9

9   million of industrial foam from Time Release Sciences, Inc.

10  ("TRS").   Throughout 1993, Wilshire and TRS disputed the quality

11  of the foam Wilshire had received from TRS.

12    53.   On December 29, 1993, Wilshire asserted a claim against

13  TRS for $1.9 million on the ground that TRS's product was

14  defective.   Wilshire later reduced the claim to almost

15  $1 million.   In response, TRS denied owing Wilshire any money.

16    54.   Crow and Kuebler each caused Wilshire to reduce its

17  "cost of goods sold" account as of November 30, 1993, by the

18  amount of Wilshire's contested claim against TRS.   This had the

19  effect of increasing Wilshire's fiscal 1993 pre-tax earnings by

20  almost $1 million.

21    55.   Crow was on the TRS Board of Directors throughout 1993.

22  At the time that Wilshire credited its TRS claim against "cost of

23  goods sold," Crow had TRS's October 1993 financial statements

24  which showed that TRS did not have the ability to pay a

25  $1 million claim.

26    56.   Throughout 1993, Kuebler believed that TRS was not

27  well-capitalized.

28  *

57. Prior to Wilshire's fiscal 1993 earnings announcement, Wilshire's auditor informed both Crow and Kuebler that the auditor required Wilshire to obtain a settlement agreement with TRS and to provide evidence that the claim was collectible. Neither Crow nor Kuebler provided the evidence the auditor required.

58. Also prior to Wilshire's fiscal 1993 earnings announcement, Wilshire's auditor informed Kuebler, who informed Crow, that Wilshire would have to disclose that there was a collectibility issue with respect to the TRS claim.

59. Crow and Kuebler each failed to disclose in Wilshire's fiscal 1993 earnings announcement that the company's earnings could be affected by $1 million since the claim against TRS was contested and, in any event, may not have been collectible.

### Second Conditional Sale of Pipe Plugs to Baxter

60. Crow and Kuebler each caused Wilshire to record, as of November 30, 1993, $1 million in revenue based on a purported oral purchase order for pipe plugs from Baxter.

61. On January 6, 1994, Crow, and other Wilshire employees requested that Baxter issue a written purchase order confirming a purported mid-November 1993 oral purchase order. During the conference call, Crow specifically agreed that Baxter's order was contingent on Baxter's customer's acceptance of the product, Baxter's right to return the product, and Wilshire's acceptance of responsibility for any specification changes to the pipe plugs required by Baxter's customer. However, Crow asked Baxter to specify the conditional terms of the order on a document separate from the purchase order.

1   62.  Later on January 6, 1994, Baxter sent to Wilshire by
2   facsimile a purchase order addendum that confirmed and detailed
3   the agreed upon sale conditions.  Crow and Kuebler each received
4   and read the addendum.  Crow then directed another Wilshire
5   employee to sign the addendum on behalf of Wilshire and return it
6   to Baxter.

7   63.  Despite their specific knowledge that the Baxter offer
8   was contingent on events that had not occurred, Crow and Kuebler
9   each allowed Wilshire to record revenue on the Baxter sale.  As a
10  result, Wilshire overstated its fourth quarter revenue reported
11  in its January 21, 1994 press release.

12  64.  Although Crow and Kuebler each knew that the
13  transaction with Baxter was reviewed by the company's auditor
14  during an audit of Wilshire's financial statements, neither Crow
15  nor Kuebler ever made the auditor aware of the addendum to the
16  purchase order that detailed the conditions.

17          Overstatement of Wilshire's Fourth Quarter and Fiscal
18          1993 Revenue and Earnings

19  65.  Crow and Kuebler each caused Wilshire to issue a press
20  release dated January 21, 1994 in which Wilshire reported fourth
21  quarter 1993 pre-tax earnings of $1,066,000.  Wilshire had
22  actually incurred a fourth quarter loss of $4.9 million.  The
23  January 21, 1994 release thus overstated Wilshire's fourth
24  quarter pre-tax earnings by $6 million.

25  66.  The January 21, 1994 press release also announced
26  pre-tax earnings for fiscal 1993 of over $2.1 million, or $.54
27  per share, and revenues of $11 million.  Crow and Kuebler each
28  *

                                    16

1 knew that these figures were materially false and misleading at
2 the time the press release was issued.

3     67. The revenue and earnings figures announced in the
4 January 21, 1994 press release included revenue from the November
5 1993 conditional sale of TrimPatch to B&R, the sale of OEM to
6 WAM, the conditional sale of pipe plugs to Baxter, and the
7 disputed claim against Time Release Sciences.

8     68. On January 21, 1994, Crow and Kuebler each knew that
9 the recording of revenue from the November 1993 conditional sale
10 of TrimPatch to B&R, the sale of OEM to WAM, the conditional sale
11 of pipe plugs to Baxter, and the disputed claim against Time
12 Release Sciences was contrary to Generally Accepted Accounting
13 Principles and that, as a result, Wilshire had overstated both
14 its fourth quarter and fiscal 1993 revenues and earnings.

15     69. On January 18, 1994, Wilshire paid a performance bonus
16 of $50,000 to Crow based on Wilshire's fiscal 1993 performance.
17 The amount of the bonus was calculated on revenue and earnings
18 figures which Crow knew were false.

19               Crow's Sale of Wilshire Stock

20     70. While in possession of material non-public information
21 concerning Wilshire's financial condition, Crow sold a total of
22 75,000 shares of Wilshire common stock in the open market for
23 approximately $1.4 million between November 8, 1993 and
24 December 5, 1993. Crow sold Wilshire shares in advance of
25 Wilshire's disclosure of its true financial condition and, in
26 doing so, avoided losses of almost $1.2 million.

27     71. At the time of each sale of Wilshire stock during the
28 period November 8, 1993 to December 5, 1993, Crow was aware that

1   Wilshire had materially overstated its earnings in press releases
2   and periodic filings, made false statements concerning sales and
3   regulatory approval of TrimPatch in press releases, and made
4   false statements in press releases that Wilshire was on target to
5   meet analysts' estimates for fiscal 1993 (as set forth above).

6       72.   Crow sold 75,000 shares of his Wilshire stock
7   during November and December 1993 as detailed below:

| Date | Shares Sold | Price | Proceeds |
|------|-------------|-------|----------|
| 11/08/93 | 12,100 | $20.12 | $243,452 |
| 11/09/93 | 36,800 | 19.50 | 717,600 |
| 11/10/93 | 500 | 19.13 | 9,563 |
| 12/07/93 | 25,600 | 16.59 | 424,704 |
| Total | 75,000 | | $1,395,319 |

15      73.   After the close of the American Stock Exchange on
16  March 14, 1994, Wilshire announced that it would delay filing its
17  Form 10-KSB for its fiscal year ended November 30, 1993 and that,
18  instead of the $2 million profit that Wilshire had previously
19  reported in a January 21, 1994 press release, it would likely
20  report a substantial loss.  Concurrent with this announcement,
21  the American Stock Exchange suspended trading in Wilshire's
22  stock.

23      74.   On March 28, 1994, Wilshire announced that it had
24  restated its financial condition as of November 30, 1993.  Among
25  other things, the company reported a reduction of its fiscal 1993
26  net earnings by $6.5 million, resulting in a $4.5 million net
27  loss.  Wilshire also reported that it had terminated Crow.
28  *

                                18

1    75.  After Wilshire filed its fiscal 1993 Form 10-KSB on

2    June 22, 1994, the American Stock Exchange allowed trading in

3    Wilshire stock to resume on June 28, 1994.  Wilshire's per share

4    stock price fell to $2.625.

5    76.  By trading on the basis of material, non-public

6    information, defendant Crow avoided losses of approximately

7    $1,198,446.

8                          **FIRST CLAIM**

9                          **FRAUD IN THE**

10              **OFFER OR SALE OF SECURITIES**

11              **Section 17(a) of the Securities**

12                 **Act [15 U.S.C. § 77q(a)]**

13    77.  Paragraphs 3 through 76 of this complaint are realleged

14    and incorporated herein by reference.

15    78.  Defendant Crow, by engaging in the conduct described in

16    Paragraphs 3 through 76 above, directly or indirectly, in the

17    offer or sale of securities, by the use of means or instruments

18    of transportation or communication in interstate commerce or by

19    the use of the mails:

20              a.    with scienter, employed devices, schemes or

21                    artifices to defraud;

22              b.    obtained money or property by means of untrue

23                    statements of material fact or by omitting to

24                    state material facts necessary in order to make

25                    the statements made, in the light of the

26                    circumstances under which they were made, not

27                    misleading; or

28    *

                              19

1        c.    engaged in transactions, practices or courses of

2              business which operated or would operate as a

3              fraud or deceit upon the purchasers of such

4              securities.

5    79.  By reason of the foregoing, Defendant Crow violated,

6 and unless enjoined will continue to violate, Section 17(a) of

7 the Securities Act.

**SECOND CLAIM**

**FRAUD IN CONNECTION WITH THE**

**PURCHASE OR SALE OF SECURITIES**

**Section 10(b) of the Exchange Act**

**[15 U.S.C. § 78j(b)] and Rule 10b-5**

**thereunder [17 C.F.R. § 240.10b-5]**

14    80.  Paragraphs 3 through 76 of this Complaint are realleged

15 and incorporated herein by reference.

16    81.  Defendants Crow and Kuebler by each engaging in the

17 conduct described in Paragraphs 3 through 76 above, directly or

18 indirectly, in connection with the purchase or sale of

19 securities, by the use of means or instrumentalities of

20 interstate commerce, or of the mails, or of a facility of a

21 national securities exchange, with scienter:

22        a.    employed devices, schemes or artifices to defraud;

23        b.    made untrue statements of material facts or

24              omitted to state material facts necessary in order

25              to make the statements made, in the light of the

26              circumstances under which they were made, not

27              misleading; or

28  *

c.    engaged in acts, practices or courses of business
              which operated or would operate as a fraud or
              deceit upon other persons.

    82.  By reason of the foregoing, Defendants Crow and Kuebler
each violated, and unless enjoined will continue to violate,
Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

                          **THIRD CLAIM**

          **VIOLATION OF THE REPORTING REQUIREMENTS**

                      **OF THE EXCHANGE ACT**

              **Section 13(a) of the Exchange Act**

              **[15 U.S.C. § 78m(a)], and Rules 12b-20**

                **and 13a-13 [17 C.F.R. §§ 240.12b-20**

                      **and 240.13a-13]**

    83.  Paragraphs 3 through 69 of this Complaint are realleged
and incorporated herein by reference.

    84.  By engaging in the conduct set forth in paragraphs 3
through 69 above, Defendants Crow and Kuebler each caused
Wilshire to file with the Commission required periodic reports on
Form 10-QSB that contained untrue statements of material fact and
omitted to state material facts required to be stated or
necessary in order to make the statements made, in light of the
circumstances under which they were made, not misleading.

    85.  Defendants Crow and Kuebler, at all relevant times,
were controlling persons of Wilshire pursuant to Section 20(a) of
the Exchange Act [15 U.S.C. §78t(a)].

    86.  By reason of the foregoing, Defendants Crow and Kuebler
each violated, and unless enjoined, will continue to violate

*

                              21

Section 13(a) of the Exchange Act and Rules 12b-20 and 13a-13 thereunder.

### FOURTH CLAIM

### VIOLATION OF THE RECORDKEEPING PROVISIONS

### OF THE EXCHANGE ACT

### Exchange Act § 13(b)(2)(A)

### [15 U.S.C. § 78m(b)(2)(A)]

87. Paragraphs 3 through 69 of this Complaint are realleged and incorporated herein by reference.

88. By engaging in the conduct set forth in paragraphs 3 through 69 above, Defendants Crow and Kuebler each caused Wilshire to fail to make and keep accurate books, records and accounts which, in reasonable detail, accurately and fairly reflected Wilshire's financial transactions.

89. Defendants Crow and Kuebler, at all relevant times, were each controlling persons of Wilshire pursuant to Section 20(a) of the Exchange Act.

90. By reason of the foregoing, Defendants Crow and Kuebler each violated, and unless enjoined, will continue to violate Section 13(b)(2)(A) of the Exchange Act.

### FIFTH CLAIM

### VIOLATION OF THE INTERNAL CONTROLS

### PROVISIONS OF THE EXCHANGE ACT

### Exchange Act § 13(b)(2)(B)

### [15 U.S.C. § 78m(b)(2)(B)]

91. Paragraphs 3 through 69 of this Complaint are realleged and incorporated herein by reference.

*

1   92. By engaging in the conduct set forth in paragraphs 3
2   through 69 above, Defendants Crow and Kuebler each caused
3   Wilshire to fail to maintain a system of internal accounting
4   controls sufficient to provide reasonable assurances that
5   Wilshire's financial statements were prepared in accordance with
6   Generally Accepted Accounting Principles.
7   93. By reason of the foregoing, Defendants Crow and Kuebler
8   each violated, and unless enjoined, will continue to violate
9   Section 13(b)(2)(B) of the Exchange Act.

10                          **SIXTH CLAIM**

11                 **FALSIFYING BOOKS AND RECORDS**

12                          **Exchange Act**

13              **Rule 13b2-1 [17 C.F.R. § 240.13b2-1]**

14  94. Paragraphs 3 through 69 of this Complaint are realleged
15  and incorporated herein by reference.
16  95. By engaging in the conduct set forth in paragraphs 3
17  through 69 above, Defendants Crow and Kuebler each, directly or
18  indirectly, falsified or caused to be falsified books, records or
19  accounts subject to Section 13(b)(2)(A) of the Exchange Act.
20  96. By reason of the foregoing, Defendants Crow and Kuebler
21  each violated, and unless enjoined, will continue to violate
22  Exchange Act Rule 13b2-1.

23                        **SEVENTH CLAIM**

24                 **FALSE STATEMENTS TO AUDITORS**

25                          **Exchange Act**

26              **Rule 13b2-2 [17 C.F.R. § 240.13b2-2]**

27  97. Paragraphs 3 through 69 of this Complaint are realleged
28  and incorporated herein by reference.

1     98. By engaging in the conduct set forth in paragraphs 3

2 through 69 above, Defendants Crow and Kuebler, directly or

3 indirectly, made or caused to be made, materially false or

4 misleading statements, or omitted to state, or caused another

5 person to omit to state, material facts in order to make

6 statements made, in light of the circumstances under which such

7 statements were made, not misleading to accountants in connection

8 with (1) an audit or examination of the financial statements of

9 Wilshire required to be made pursuant to Exchange Act

10 regulations, or (2) the preparation or filing of reports or

11 documents required to be filed with the Commission pursuant to

12 Exchange Act regulations or otherwise.

13     99. By reason of the foregoing, Defendants Crow and Kuebler

14 each violated, and unless enjoined, will continue to violate,

15 Exchange Act Rule 13b2-2.

16                          **PRAYER FOR RELIEF**

17     WHEREFORE, the Commission respectfully requests that this

18 Court:

19                             I.

20     Issue findings of fact and conclusions of law that

21 Defendants Crow and Kuebler each committed the violations charged

22 and alleged herein.

23                           II.

24     Permanently enjoin Defendant Crow from violating Section

25 17(a) of the Securities Act and Sections 10(b), 13(a) and

26 13(b)(2)(A) and (B) of the Exchange Act and Rules 10b-5, 12b-20,

27 13a-13, 13b2-1 and 13b2-2 thereunder.

28 *

III.

Permanently enjoin Defendant Kuebler from violating Sections 10(b), 13(a) and 13(b)(2)(A) and (B) of the Exchange Act and Rules 10b-5, 12b-20, 13a-13, 13b2-1 and 13b2-2 thereunder.

IV.

Prohibit Crow from serving as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act or that is required to file reports pursuant to Section 15(d) of the Exchange Act.

V.

Order Defendant Crow to disgorge all benefits gained and losses avoided as a result of his illegal conduct and to pay prejudgment interest thereon.

VI.

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

VII.

Grant such other and further relief as this Court may determine to be just and necessary.

DATED:   October 31, 1996

Roberto A. Tercero
Attorney for Plaintiff Securities
and Exchange Commission

<u>PROOF OF SERVICE</u>

STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California, United States of America. I am over the age of 18 and not a party to the within action. My business address is 5670 Wilshire Boulevard, 11th Floor, Los Angeles, California 90036.

On October 31, 1996, I served on the following interested parties at their last known address in this action the foregoing document described as FIRST AMENDED COMPLAINT by placing true and correct copies thereof in a sealed envelope with postage thereon fully prepaid in the United States mail at Los Angeles, California, addressed as set forth below.

> James L. Sanders, Esq.
> Thomas M. Brown, Esq.
> Sheppard, Mullin, Richter & Hampton
> 333 South Hope Street
> Los Angeles, California 90071-1448

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on October 31, 1996 at Los Angeles, California.

Marylee Burton

JAMES L. SANDERS, Bar No. 126291
THOMAS M. BROWN, Bar No. 117449
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
333 South Hope Street, 48th Floor
Los Angeles, California 90071
Telephone: (213) 620-1780

FRANK J. JOHNSON, Bar No. 174882
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
501 West Broadway, 19th Floor
San Diego, California 92101-3505
Telephone: (619) 338-9100

Attorneys for Defendant
MICHAEL W. CROW

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No. 96-1661 S CM |
| Plaintiff, | ANSWER OF DEFENDANT MICHAEL W. CROW TO THE FIRST AMENDED COMPLAINT |
| v. | |
| MICHAEL W. CROW and PETER F. KUEBLER, | DEMAND FOR JURY TRIAL |
| Defendants. | |

Defendant Michael W. Crow ("Crow") hereby files his Answer to Plaintiff Securities and Exchange Commission's ("SEC") First Amended Complaint (the "Complaint"). Without waiving any privileges

by virtue of his appearance in this matter which he may have under the Fifth Amendment to the United States Constitution, defendant Michael W. Crow answers as follows:

With respect to each and every allegation contained in the SEC's Complaint, defendant Michael W. Crow generally and specifically asserts his privilege against self-incrimination based on the Fifth Amendment to the United States Constitution.

WHEREFORE, defendant Michael W. Crow requests the Court to deny the relief sought against him in the SEC's Complaint.

Dated:     November 15, 1996

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By  _____
                 THOMAS M. BROWN

Attorneys for Defendant
MICHAEL W. CROW

# DEMAND FOR JURY TRIAL

A trial by jury is demanded.

Dated:     November 15, 1996

                         SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By     _____
                              THOMAS M. BROWN

                         Attorneys for Defendant
                         MICHAEL W. CROW

LA2:LBO\PLD\RHF\11021001.1

<u>PROOF OF SERVICE BY MAIL</u>

       I, the undersigned, declare that I am, and was at the time of service of the papers herein referred to, over the age of 18 years and not a party to the within action or proceeding. My business address is Sheppard, Mullin, Richter & Hampton LLP, 333 South Hope Street, 48th Floor, Los Angeles, California 90071, which is located in the county in which the within-mentioned mailing occurred. I am readily familiar with the practice at my place of business for collection and processing of correspondence for mailing with the United States Postal Service. Such correspondence will be deposited with the United States Postal Service on the same day in the ordinary course of business.

       On November 18, 1996, I served the following document(s):

    ANSWER OF DEFENDANT MICHAEL W. CROW TO THE FIRST AMENDED COMPLAINT

by placing __XX__ a true copy _____ the original in a separate envelope for each addressee named below, with the name and address of the persons served shown on the envelope as follows:

    Securities and Exchange Commission
    James A. Howell
    5670 Wilshire Boulevard
    11th Floor
    Los Angeles, CA 90036

and by sealing the envelope and placing it in the appropriate location at my place of business for collection and mailing with postage fully prepaid in accordance with ordinary business practices.

Executed on November 18, 1996, at Los Angeles, California.

   (State)    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

   XX  (Federal)  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

                  PATRICIA CLOUTIER

1 │ ELAINE M. CACHERIS, Cal. Bar # 101605
    │ SANDRA J. HARRIS, Cal. Bar # 134153
2 │ JAMES A. HOWELL, Cal. Bar # 92721
    │ AIMEE DOMINGUEZ SILVERS, Cal. Bar # 145106
3 │
    │ Attorneys for Plaintiff
4 │ Securities and Exchange Commission
    │ 5670 Wilshire Boulevard, 11th Floor
5 │ Los Angeles, California  90036-3648
    │ (213) 965-3998

FILED

APR 16 1998

CLERK, U.S. DISTRICT ...

6

7

8 │            UNITED STATES DISTRICT COURT

9 │           SOUTHERN DISTRICT OF CALIFORNIA

10

11 │ SECURITIES AND EXCHANGE COMMISSION │ Case No. 96-1661 (CGA)

12 │           Plaintiff,                │ CONSENT OF DEFENDANT MICHAEL W.
                                          │ CROW TO ENTRY OF JUDGMENT OF
13 │      vs.                            │ PERMANENT INJUNCTION AND OTHER
                                          │ RELIEF
14 │ MICHAEL W. CROW AND
    │ PETER F. KUEBLER,
15 │
    │           Defendants.
16 │

17

18 │     Defendant Michael W. Crow ("Crow"), without admitting or

19 │ denying any of the allegations of the First Amended Complaint in

20 │ this action, except as specifically set forth herein, consents to

21 │ the entry of a Judgment of Permanent Injunction and Other Relief

22 │ Against Michael W.  Crow ("Judgment"), in the form attached hereto

23 │ as Exhibit 1, enjoining him from future violations Section 17(A) of

24 │ the Securities Act of 1933 (the "Act") [15 U.S.C. § 77q] and

25 │ Sections 10(b), 13(a), and 13(b)(2)(A) & (B) of the Securities

26 │ Exchange Act of 1934 ("Exchange Act")  [15 U.S.C. §§ 78j(b), 78m(a),

27 │ 78m(b)(2)(A) &, 78m(b)(2)(B), and Rules 10b-5, 12b-20, 13a-13, 13b2-

28 │ 1 and 13b2-2 thereunder [17 C.F.R. §§ 240.10b-5, 240.12b-20,

240.13a-13, 240.13b-2-1, & 240.13b-2-2], and providing for other relief. Defendant Crow, for purposes of this Consent of Defendant Crow to Entry of Judgment of Permanent Injunction and Other Relief ("Consent"), consents, admits, acknowledges, represents, understands, waives, and agrees as follows:

1. Crow admits service upon him of the Summons and First Amended Complaint in this action.

2. Crow admits the jurisdiction of this Court over him and over the subject matter of this action.

3. Crow acknowledges having been fully advised and informed of his right to a judicial determination of this matter.

4. Crow waives the entry of findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure.

5. Crow voluntarily consents to the entry of the Judgment and represents that no tender, offer, promise or threat of any kind whatsoever has been made by the Securities and Exchange Commission ("Commission") or any member, officer, agent or representative thereof to induce it to so consent.

6. Crow agrees that, during the pendency of this action against any defendant, he will remain subject to the discovery provisions of the Federal Rules of Civil Procedure which apply to parties, and, in addition, agrees and undertakes that he will appear without the service of a subpoena to testify as a witness at the trial of this action or at any other related proceedings.

7. Crow agrees to the entry of an injunction permanently barring him, pursuant to Section 20(e) of the Securities Act [15 U.S.C. § 78t(e)] and Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)], from serving as an officer or director of any issuer

that has a class of securities registered pursuant to Section 12 of the Exchange Act or that is required to file reports pursuant to Section 15(d) of the Exchange Act.

8. Crow acknowledges that the Court is not imposing $1,248,444 in disgorgement, plus prejudgment interest in the sum of $225,773, based upon the accuracy and completeness of Crow's representations concerning a transfer of stock pursuant to his settlement of a class action lawsuit, <u>In re: Wilshire Technologies Securities Litigation</u>, U.S. Dist. Crt., So. Dist. of Cal., File No. 94-0400-B (AJB). Crow represents that he surrendered his beneficial ownership of 800,000 shares of common stock in Advanced Materials Group, Inc. ("AMG") in settlement of the above mentioned class action. As of January 30, 1998, the AMG stock was listed in the National Quotation Service Pink Sheets at a bid price of $3.50 per share. At this price, Crow surrendered $2,800,000 worth of AMG common stock to settle the class action. This amount is in excess of the disgorgement and prejudgment interest that could be imposed by the Court in this action. Crow further consents that if at any time following the entry of this Judgment the Commission obtains information indicating that Crow's representations to the Commission concerning his settlement of the class action lawsuit were fraudulent, misleading, inaccurate or incomplete in any material respect as of the time such representations were made, the Commission may, at its sole discretion and without prior notice to Crow, petition this Court to vacate any portion of the Judgment and seek a Judgment of disgorgement. In connection with any such petition, the only issue shall be whether the information provided by Crow was fraudulent, misleading, inaccurate or incomplete in any

material respect as of the time such representations were made. In its petition, the Commission may move this Court to consider all available remedies, including, but not limited to, ordering Crow to pay funds or assets, directing the forfeiture of any assets, or sanctions for contempt of this Judgment, and the Commission may also request additional discovery. Crow, may not by way of defense to such petition, challenge the validity of the Consent or the Judgment, contest the allegations in the First Amended Complaint filed by the Commission or that the payment of the $1,248,444 in disgorgement, plus prejudgment interest should not be ordered.

9. Crow acknowledges and agrees that this proceeding and his consent to the entry of the Judgment are for the purposes of resolving this civil proceeding only, in conformity with provisions of 17 C.F.R. § 202.5(f), and do not resolve, affect or preclude any other proceeding which may be brought against Crow.

10. Consistent with the provisions of 17 C.F.R. § 202.5(f), Crow waives any claim of Double Jeopardy based upon the settlement of this proceeding, including the imposition of any remedy or civil penalty.

11. Crow admits that the Judgment entered in accordance with this Consent complies with Rule 65(d) of the Federal Rules of Civil Procedure and that he has been advised and understands that the Court may adjudge him in civil or criminal contempt if he commits any violation of any provision of the Judgment entered pursuant to this Consent.

12. Crow understands and agrees to comply with the Commission's policy "not to permit a defendant or respondent to consent to a judgment or order that imposes a sanction while denying

the allegations in the complaint or order for proceedings" (17 C.F.R. § 202.5(e)).  In compliance with this policy, Crow agrees: (i) not to take any action or to make or permit to be made any public statement denying, directly or indirectly, any allegation in the First Amended Complaint or creating the impression that the First Amended Complaint is without factual basis; and (ii) that upon filing of this consent, Crow hereby withdraws any papers filed in this action to the extent that they deny any allegation in the First Amended Complaint.  If Crow breaches this agreement, the Commission may petition the Court to vacate the Judgment and restore this case to its active docket.  Nothing in this provision affects Crow's testimonial obligations or right to take legal positions in litigation in which the Commission is not a party.

13.  Crow waives any right he may have to appeal from the Judgment.

14.  Crow hereby agrees that the Judgment in the form attached hereto as Exhibit 1, and incorporated herein by reference, may be presented by the Commission to the Court for signature and entry forthwith and without further notice.

15.  Crow hereby acknowledges that he will accept service of a copy of the Judgment and will acknowledge receipt thereof in writing.

16.  Crow hereby agrees that this Court shall retain jurisdiction over this action for all purposes including determining the liability of any remaining defendants in this action, implementing and carrying out the terms of the Judgment and all other orders and decrees which have been and may be entered herein, to resolve the Commission's pending claims for disgorgement,

1 prejudgment interest and civil penalties as appropriate, to

2 entertain any suitable application or motion for additional relief

3 within the jurisdiction of this Court, and to grant such other

4 relief as the Court may deem necessary and just.

5     15. Crow hereby agrees that the Consent may be annexed to, and

6 made a part of, the Judgment filed simultaneously herewith.

7     16. Crow represents that he has read this Consent before

8 signing it.

9

10 DATED: _____3/18_____, 1998

11

12                                    By: _____

13                                        Michael W. Crow

14

15

16 Approved as to Form and Content:

17

18 _____

19 James L. Sanders
Attorney for Defendant
Michael W. Crow

20

21

22

23

24

25

26

27

28

ELAINE M. CACHERIS, Cal. Bar # 101605
SANDRA J. HARRIS, Cal. Bar # 134153
JAMES A. HOWELL, Cal. Bar # 92721
AIMEE DOMINGUEZ SILVERS, Cal. Bar # 145106

Attorneys for Plaintiff
Securities and Exchange Commission
5670 Wilshire Boulevard, 11th Floor
Los Angeles, California  90036-3648
(213) 965-3998

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION | Case No. 96-1661 S (CGA) |
| Plaintiff, | JUDGMENT OF PERMANENT INJUNCTION AND OTHER RELIEF AGAINST DEFENDANT MICHAEL W. CROW |
| vs. | |
| MICHAEL W. CROW AND PETER F. KUEBLER, | |
| Defendants. | |

Plaintiff Securities and Exchange Commission ("Commission"),
having filed and served upon Defendant Michael W. Crow ("Crow"), a
Summons and First Amended Complaint in this matter and Crow, having
admitted service upon him of the Summons and First Amended Complaint
in this action and the jurisdiction of this Court over him and over
the subject matter of this action; having been fully advised and
informed of his right to a judicial determination of this matter;
having waived the entry of findings of fact and conclusions of law
as provided by Rule 52 of the Federal Rules of Civil Procedure;
having consented to the entry of this Judgment of Permanent
Injunction and Other Relief Against Defendant Michael W. Crow

1  ("Judgment") and without admitting or denying the allegations in the

2  First Amended Complaint, except as specifically set forth in the

3  Consent of Defendant Michael W. Crow to Entry of Judgment of

4  Permanent Injunction and Other Relief ("Consent"); and it appearing

5  that no notice of hearing upon the entry of this Judgment being

6  necessary; and the Court being fully advised in the premises, and

7  there being no just reason for delay:

8                                    I.

9      IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Crow and his

10 agents, servants, employees and attorneys, and all persons in active

11 concert or participation with any of them, who receive actual notice

12 of this Judgment, by personal service or otherwise, and each of

13 them, are permanently restrained and enjoined from, directly or

14 indirectly, by the use of any means or instrumentality of interstate

15 commerce, or of the mails, or of any facility of any national

16 securities exchange:

17     A.    to employ any device, scheme of artifice to defraud, or

18     B.    to obtain money or property by means of any untrue

19 statement of a material fact or any omission to state a material

20 fact necessary in order to make the statements made, in light of the

21 circumstances in which they were made, not misleading, or

22     C.    to engage in any transaction, practice, or course of

23 business which operates or would operate as a fraud or deceit upon

24 the purchaser;

25 in violation of Section 17(a) of the Securities Act of 1933 [15

26 U.S.C. § 77q(a)]

27 //

28 //

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Crow and his agents, servants, employees and attorneys, and all persons in active concert or participation with any of them, who receive actual notice of this Judgment, by personal service or otherwise, and each of them, are permanently restrained and enjoined from, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange:

A.   employing any device, scheme, or artifice to defraud;

B.   making any untrue statement of a material fact or omitting to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

C.   engaging in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security;

in violation of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

III.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Crow and his agents, servants, employees and attorneys, and all persons in active concert or participation with any of them, who receive actual notice of this Judgment, by personal service or otherwise, and each of them, are permanently restrained and enjoined from, directly or indirectly,

1   filing or causing the filing of required periodic reports
2   with the Commission containing untrue statements of
3   material fact and omitting to state material facts
4   required to be stated or necessary in order to make the
5   statements made, in light of the circumstances under which
6   they were made, not misleading;
7   in violation of Section 13(a) of the Exchange Act [15 U.S.C. §
8   78m(a)] and Rules 12b-20 and 13a-13 thereunder [17 C.F.R. §§
9   240.12b-20 & 240.13a-13].

10                              IV.

11      IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Crow and his
12          agents, servants, employees and attorneys, and all persons
13          in active concert or participation with any of them, who
14          receive actual notice of this Judgment, by personal
15          service or otherwise, and each of them, are permanently
16          restrained and enjoined from, directly or indirectly:
17   A.     causing the failure to make and keep accurate books,
18          records and accounts which, in reasonable detail,
19          accurately and fairly reflect financial transactions and
20          disposition of assets;
21   B.     directly, or indirectly, falsifying, or causing to be
22          falsified books, records or accounts subject to Section
23          13(b)(2)(A) of the Exchange Act;
24   C.     directly or indirectly, making or causing to be made, or
25          causing another person to omit to state, materially false
26          or misleading statements, or omitting to state material
27          facts in order to make statements made, in light of the
28          circumstances under which such statements were made, not

1  misleading to accountants in connection with (1) an audit
2  or examination of financial statements required to be made
3  pursuant to the Exchange Act regulations, or (2) the
4  preparation or filing of reports or documents required to
5  be filed with the Commission pursuant to Exchange Act
6  regulations or otherwise;
7  in violation of Section 13(b)(2)(A) of the Exchange Act [15 U.S.C. §
8  78m(b)(2)(A)] and Rules 13b2-1 and 13b2-2 thereunder [17 C.F.R. §§
9  240.13b2-1 & 240.13b2-2].

10                              V.

11  IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Crow and his
12  agents, servants, employees and attorneys, and all persons
13  in active concert or participation with any of them, who
14  receive actual notice of this Judgment, by personal
15  service or otherwise, and each of them, are permanently
16  restrained and enjoined from, directly or indirectly,
17  failing, or causing the failure, to maintain a system of
18  internal accounting controls sufficient to provide
19  reasonable assurances that financial statements are
20  prepared in conformity with Generally Accepted Accounting
21  Principles;
22  in violation of Section 13(b)(2)(B) of the Exchange Act [15 U.S.C. §
23  78m(b)(2)(B)].

24                              VI.

25  IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Crow, pursuant
26  to Section 20(e) of the Securities Act [15 U.S.C. § 78t(e)] and
27  Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)], is
28  permanently barred from acting as an officer or director of any

issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l] or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o].

## VII.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Crow shall, during the pendency of this action, provide all documents in his possession, custody or control to the Commission and disclose under oath all information with respect to his activities and the activities of others about which the Commission or its staff may inquire or request. Such production of documents and disclosure of information by Crow shall be made upon reasonable notice in writing and without the service of a subpoena and subject only to the good faith assertion of any privileges recognizable pursuant to the provisions of Rule 501 of the Federal Rules of Evidence or the United States Constitution and amendments thereto.

## VIII.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Crow shall, during the pendency of this action against any defendant, he will remain subject to the discovery provisions of the Federal Rules of Civil Procedure which apply to parties, and, in addition, agrees and undertakes that he will appear without the service of a subpoena to testify as a witness at the trial of this action or at any related proceeding.

## IX.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the provisions of the Consent filed concurrently with this Judgment are

1　incorporated herein with the same force and effect as if fully set

2　forth herein and that Crow shall comply with his Consent.

3　　　　　　　　　　　　　　　X.

4　　　IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Crow shall pay

5　disgorgement in an amount of $1,248,444. Crow shall further pay

6　prejudgment interest on the amount of the disgorgement in the sum of

7　$225,773. The prejudgment interest is calculated pursuant to U.S.C.

8　Section 1961. The Court will not require Crow to pay such

9　disgorgement based upon the accuracy and completeness of Crow's

10　representations concerning a transfer of stock pursuant to his

11　settlement of a class action lawsuit, In re: Wilshire Technologies

12　Securities Litigation, U.S. Dist. Crt., So. Dist. of Cal., File No.

13　94-0400-B (AJB). Crow has surrendered 800,000 free trading shares

14　of common stock in Advanced Materials Group, Inc. ("AMG") in

15　settlement of the above-mentioned class action. As of January 30,

16　1998, the AMG stock was listed in National Quotation Service Pink

17　Sheets at a bid price of $3.50 per share. At this value, Crow has

18　surrendered $2,800,000 worth of AMG stock. This amount is in excess

19　of the disgorgement and prejudgment interest that is imposed by the

20　Court herein.

21　　　　　　　　　　　　　　　XI.

22　　　IT IS FURTHER ORDERED, ADJUDGED AND DECREED that if at any time

23　following the entry of this Judgment, the Commission obtains

24　information indicating that Crow's representations to the Commission

25　concerning his settlement of the class action lawsuit are

26　fraudulent, misleading, inaccurate or incomplete, or if Crow has

27　failed to cause the transfer of 800,000 free trading shares of AMG

28　stock to settle the class action lawsuit, the Commission may, at its

1   sole discretion and without prior notice to Crow, petition the Court

2   to vacate any portion of the Judgment and seek a Judgment of

3   disgorgement. In connection with any such petition, the only issue

4   shall be whether the information provided by Crow was fraudulent,

5   misleading, inaccurate or incomplete in any material respect as of

6   the time such representations were made. In its petition, the

7   Commission may move this Court to consider all available remedies,

8   including, but not limited to, ordering Crow to pay funds or assets,

9   directing the forfeiture of any assets, or sanctions for contempt of

10   this Judgment, and the Commission may also request additional

11   discovery. Crow, may not by way of defense to such petition,

12   challenge the allegations in the First Amended Complaint filed by

13   the Commission or that the payment of $1,248,444 in disgorgement,

14   plus prejudgment interest should not be ordered.

15                           XII.

16      IT IS FURTHER ORDERED, ADJUDGED AND DECREED that this Court

17   shall retain jurisdiction over this action for all purposes

18   including determining the liability of any remaining defendants in

19   this action, implementing and carrying out the terms of the Judgment

20   and all other orders and decrees which have been and may be entered

21   herein, to entertain any suitable application or motion for

22   additional relief within the jurisdiction of this Court, and to

23   grant such other relief as the Court may deem necessary and just.

24   //

25   //

26   //

27   //

28   //

| | |
|---|---|
| 1 | * * * * * * * * * |
| 2 | There being no just reason for delay, the Clerk of the Court is |
| 3 | hereby directed, pursuant to Rule 54(b) of the Federal Rules of |
| 4 | Civil Procedure, to enter this Judgment forthwith. |
| 5 | |
| 6 | Dated this _____ day of _____, 1998 |
| 7 | |
| 8 | |
| 9 | United States District Judge |

<u>PROOF OF SERVICE BY MAIL</u>

I, Magnolia M. Marcelo, declare that I am, and was at the time of service of the papers herein referred to, over the age of eighteen (18) years and not a party to the within action. My business address is 5670 Wilshire Boulevard, 11th Floor, Los Angeles, California 90036, which is located in the county in which the within-mentioned mailing occurred. I am readily familiar with the practice at my place of business for the collection and processing of correspondence for mailing with the United States Postal Service. Such correspondence is deposited with the United States Postal Service on the same day in the ordinary course of business.

On April 14, 1998, I served the following document:

**CONSENT OF DEFENDANT MICHAEL W. CROW TO ENTRY OF JUDGMENT OF PERMANENT INJUNCTION AND OTHER RELIEF**

by placing a true and correct copy in a separate envelope for each addressee named below, with the name and address of the persons served shown on the envelope as follows:

SEE ATTACHED SERVICE LIST

and by sealing the envelope and placing it in the appropriate location at my place of business for collection and mailing with postage fully prepaid in accordance with ordinary business practice.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on April 14, 1998, at Los Angeles, California.


*Magnolia M. Marcelo*
Magnolia M. Marcelo

**SERVICE LIST**
**April 14, 1998**


James L. Sanders, Esq.                    Counsel to Defendant Michael W. Crow
Thomas M. Brown, Esq.
Michael St. Denis, Esq.
Sheppard, Mullin, Richter & Hampton LLP
333 South Hope Street, 48th Floor
Los Angeles, CA 90071
TEL: (213) 620-1780
FAX: (213) 620-1398


Peter F. Kuebler                          Pro Se Defendant
616 Crest Drive
Encinitas, California 92024
TEL: (619) 753-9170
TEL: (619) 597-3940


David Wiechert, Esq.                      Courtesy Copy
650 Town Center Drive, Suite 1900
Costa Mesa, California 92626
TEL: (714) 755-8075
FAX: (714) 557-9655

SANDRA J. HARRIS, Cal. Bar # 134153
AIMEE DOMINGUEZ SILVERS, Cal. Bar # 145106

Attorneys for Plaintiff
Securities and Exchange Commission
Valerie Caproni, Regional Director
5670 Wilshire Boulevard, 11th Floor
Los Angeles, California  90036-3648
Telephone: (323) 965-3998
Facsimile: (323) 965-3908

SO APR 15 AM 10: 44

DEPUTY

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>          Plaintiff,<br><br>     vs.<br><br>MICHAEL W. CROW AND PETER F. KUEBLER,,<br><br>          Defendants. | Case No. 96-1661 S CGA<br><br>ACKNOWLEDGMENT OF RECEIPT OF JUDGMENT OF PERMANENT INJUNCTION AND OTHER RELIEF AGAINST DEFENDANT MICHAEL W. CROW |

        I, Michael W. Crow, hereby acknowledge that on _6th_ day of April March, 1999, I received a copy of the attached Judgment of Permanent Injunction And Other Relief Against Defendant Michael W. Crow entered in this action on April 20, 1998.

DATED: _____                    _____
                                            Michael W. Crow

ELAINE M. CACHERIS, Cal. Bar # 101605
SANDRA J. HARRIS, Cal. Bar # 134153
JAMES A. HOWELL, Cal. Bar # 92721
AIMEE DOMINGUEZ SILVERS, Cal. Bar # 145106

Attorneys for Plaintiff
Securities and Exchange Commission
5670 Wilshire Boulevard, 11th Floor
Los Angeles, California 90036-3648
(213) 965-3998

FILED

APR 16 1998

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION<br><br>       Plaintiff,<br><br>    vs.<br><br>MICHAEL W. CROW AND<br>PETER F. KUEBLER,<br><br>       Defendants. | Case No. 96-1661 S (CGA)<br><br>JUDGMENT OF PERMANENT INJUNCTION<br>AND OTHER RELIEF AGAINST<br>DEFENDANT MICHAEL W. CROW |

Plaintiff Securities and Exchange Commission ("Commission"),
having filed and served upon Defendant Michael W. Crow ("Crow"), a
Summons and First Amended Complaint in this matter and Crow, having
admitted service upon him of the Summons and First Amended Complaint
in this action and the jurisdiction of this Court over him and over
the subject matter of this action; having been fully advised and
informed of his right to a judicial determination of this matter;
having waived the entry of findings of fact and conclusions of law
as provided by Rule 52 of the Federal Rules of Civil Procedure;
having consented to the entry of this Judgment of Permanent
Injunction and Other Relief Against Defendant Michael W. Crow

1 ("Judgment") and without admitting or denying the allegations in the

2 First Amended Complaint, except as specifically set forth in the

3 Consent of Defendant Michael W. Crow to Entry of Judgment of

4 Permanent Injunction and Other Relief ("Consent"); and it appearing

5 that no notice of hearing upon the entry of this Judgment being

6 necessary; and the Court being fully advised in the premises, and

7 there being no just reason for delay:

8                                    I.

9      IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Crow and his

10 agents, servants, employees and attorneys, and all persons in active

11 concert or participation with any of them, who receive actual notice

12 of this Judgment, by personal service or otherwise, and each of

13 them, are permanently restrained and enjoined from, directly or

14 indirectly, by the use of any means or instrumentality of interstate

15 commerce, or of the mails, or of any facility of any national

16 securities exchange:

17      A.    to employ any device, scheme of artifice to defraud, or

18      B.    to obtain money or property by means of any untrue

19 statement of a material fact or any omission to state a material

20 fact necessary in order to make the statements made, in light of the

21 circumstances in which they were made, not misleading, or

22      C.    to engage in any transaction, practice, or course of

23 business which operates or would operate as a fraud or deceit upon

24 the purchaser;

25 in violation of Section 17(a) of the Securities Act of 1933 [15

26 U.S.C. § 77q(a)]

27 //

28 //

1

2    IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Crow and his

3 agents, servants, employees and attorneys, and all persons in active

4 concert or participation with any of them, who receive actual notice

5 of this Judgment, by personal service or otherwise, and each of

6 them, are permanently restrained and enjoined from, directly or

7 indirectly, by the use of any means or instrumentality of interstate

8 commerce, or of the mails, or of any facility of any national

9 securities exchange:

10    A.    employing any device, scheme, or artifice to defraud;

11    B.    making any untrue statement of a material fact or omitting

12          to state a material fact necessary in order to make the

13          statements made, in the light of the circumstances under

14          which they were made, not misleading; or

15    C.    engaging in any act, practice, or course of business which

16          operates or would operate as a fraud or deceit upon any

17          person, in connection with the purchase or sale of any

18          security;

19 in violation of Section 10(b) of the Securities Exchange Act of 1934

20 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17

21 C.F.R. § 240.10b-5].

22                    III.

23    IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Crow and his

24          agents, servants, employees and attorneys, and all persons

25          in active concert or participation with any of them, who

26          receive actual notice of this Judgment, by personal

27          service or otherwise, and each of them, are permanently

28          restrained and enjoined from, directly or indirectly,

| 1 | | filing or causing the filing of required periodic reports |
| 2 | | with the Commission containing untrue statements of |
| 3 | | material fact and omitting to state material facts |
| 4 | | required to be stated or necessary in order to make the |
| 5 | | statements made, in light of the circumstances under which |
| 6 | | they were made, not misleading; |

in violation of Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules 12b-20 and 13a-13 thereunder [17 C.F.R. §§ 240.12b-20 & 240.13a-13].

## IV.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Crow and his agents, servants, employees and attorneys, and all persons in active concert or participation with any of them, who receive actual notice of this Judgment, by personal service or otherwise, and each of them, are permanently restrained and enjoined from, directly or indirectly:

A. causing the failure to make and keep accurate books, records and accounts which, in reasonable detail, accurately and fairly reflect financial transactions and disposition of assets;

B. directly, or indirectly, falsifying, or causing to be falsified books, records or accounts subject to Section 13(b)(2)(A) of the Exchange Act;

C. directly or indirectly, making or causing to be made, or causing another person to omit to state, materially false or misleading statements, or omitting to state material facts in order to make statements made, in light of the circumstances under which such statements were made, not

1             misleading to accountants in connection with (1) an audit

2             or examination of financial statements required to be made

3             pursuant to the Exchange Act regulations, or (2) the

4             preparation or filing of reports or documents required to

5             be filed with the Commission pursuant to Exchange Act

6             regulations or otherwise;

7 in violation of Section 13(b)(2)(A) of the Exchange Act [15 U.S.C. §

8 78m(b)(2)(A)] and Rules 13b2-1 and 13b2-2 thereunder [17 C.F.R. §§

9 240.13b2-1 & 240.13b2-2].

10                             V.

11     IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Crow and his

12             agents, servants, employees and attorneys, and all persons

13             in active concert or participation with any of them, who

14             receive actual notice of this Judgment, by personal

15             service or otherwise, and each of them, are permanently

16             restrained and enjoined from, directly or indirectly,

17             failing, or causing the failure, to maintain a system of

18             internal accounting controls sufficient to provide

19             reasonable assurances that financial statements are

20             prepared in conformity with Generally Accepted Accounting

21             Principles;

22 in violation of Section 13(b)(2)(B) of the Exchange Act [15 U.S.C. §

23 78m(b)(2)(B)].

24                            VI.

25     IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Crow, pursuant

26 to Section 20(e) of the Securities Act [15 U.S.C. § 78t(e)] and

27 Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)], is

28 permanently barred from acting as an officer or director of any

issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l] or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o].

## VII.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Crow shall, during the pendency of this action, provide all documents in his possession, custody or control to the Commission and disclose under oath all information with respect to his activities and the activities of others about which the Commission or its staff may inquire or request. Such production of documents and disclosure of information by Crow shall be made upon reasonable notice in writing and without the service of a subpoena and subject only to the good faith assertion of any privileges recognizable pursuant to the provisions of Rule 501 of the Federal Rules of Evidence or the United States Constitution and amendments thereto.

## VIII.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Crow shall, during the pendency of this action against any defendant, he will remain subject to the discovery provisions of the Federal Rules of Civil Procedure which apply to parties, and, in addition, agrees and undertakes that he will appear without the service of a subpoena to testify as a witness at the trial of this action or at any related proceeding.

## IX.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the provisions of the Consent filed concurrently with this Judgment are

incorporated herein with the same force and effect as if fully set
forth herein and that Crow shall comply with his Consent.

X.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Crow shall pay disgorgement in an amount of $1,248,444. Crow shall further pay prejudgment interest on the amount of the disgorgement in the sum of $225,773. The prejudgment interest is calculated pursuant to U.S.C. Section 1961. The Court will not require Crow to pay such disgorgement based upon the accuracy and completeness of Crow's representations concerning a transfer of stock pursuant to his settlement of a class action lawsuit, <u>In re: Wilshire Technologies Securities Litigation</u>, U.S. Dist. Crt., So. Dist. of Cal., File No. 94-0400-B (AJB). Crow has surrendered 800,000 free trading shares of common stock in Advanced Materials Group, Inc. ("AMG") in settlement of the above-mentioned class action. As of January 30, 1998, the AMG stock was listed in National Quotation Service Pink Sheets at a bid price of $3.50 per share. At this value, Crow has surrendered $2,800,000 worth of AMG stock. This amount is in excess of the disgorgement and prejudgment interest that is imposed by the Court herein.

XI.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that if at any time following the entry of this Judgment, the Commission obtains information indicating that Crow's representations to the Commission concerning his settlement of the class action lawsuit are fraudulent, misleading, inaccurate or incomplete, or if Crow has failed to cause the transfer of 800,000 free trading shares of AMG stock to settle the class action lawsuit, the Commission may, at its

1  sole discretion and without prior notice to Crow, petition the Court

2  to vacate any portion of the Judgment and seek a Judgment of

3  disgorgement.  In connection with any such petition, the only issue

4  shall be whether the information provided by Crow was fraudulent,

5  misleading, inaccurate or incomplete in any material respect as of

6  the time such representations were made.  In its petition, the

7  Commission may move this Court to consider all available remedies,

8  including, but not limited to, ordering Crow to pay funds or assets,

9  directing the forfeiture of any assets, or sanctions for contempt of

10 this Judgment, and the Commission may also request additional

11 discovery.  Crow, may not by way of defense to such petition,

12 challenge the allegations in the First Amended Complaint filed by

13 the Commission or that the payment of $1,248,444 in disgorgement,

14 plus prejudgment interest should not be ordered.

15                                XII.

16      IT IS FURTHER ORDERED, ADJUDGED AND DECREED that this Court

17 shall retain jurisdiction over this action for all purposes

18 including determining the liability of any remaining defendants in

19 this action, implementing and carrying out the terms of the Judgment

20 and all other orders and decrees which have been and may be entered

21 herein, to entertain any suitable application or motion for

22 additional relief within the jurisdiction of this Court, and to

23 grant such other relief as the Court may deem necessary and just.

24 //

25 //

26 //

27 //

28 //

```
1                *    *    *    *    *    *    *    *    *

2        There being no just reason for delay, the Clerk of the Court is

3   hereby directed, pursuant to Rule 54(b) of the Federal Rules of

4   Civil Procedure, to enter this Judgment forthwith.

5
                                      APR 1 5 1998
6   Dated this _____ day of _____, 1998

7

8                                EDWARD J. SCHWARTZ

9                                United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
```

<u>PROOF OF SERVICE BY MAIL</u>

I, Magnolia M. Marcelo, declare that I am, and was at the time of service of the papers herein referred to, over the age of eighteen (18) years and not a party to the within action. My business address is 5670 Wilshire Boulevard, 11th Floor, Los Angeles, California 90036, which is located in the county in which the within-mentioned mailing occurred. I am readily familiar with the practice at my place of business for the collection and processing of correspondence for mailing with the United States Postal Service. Such correspondence is deposited with the United States Postal Service on the same day in the ordinary course of business.

On April 13, 1999, I caused to be served the following document:

**ACKNOWLEDGMENT OF RECEIPT OF JUDGMENT OF
PERMANENT INJUNCTION AND OTHER RELIEF AGAINST
DEFENDANT MICHAEL W. CROW**

by placing a true and correct copy in a separate envelope for each addressee named below, with the name and address of the persons served shown on the envelope as follows:

**SEE ATTACHED**

and by sealing the envelope and placing it in the appropriate location at my place of business for collection and mailing with postage fully prepaid in accordance with ordinary business practice.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on April 13, 1999 at Los Angeles, California.


Magnolia M. Marcelo

## SERVICE LIST
April 13, 1999


James L. Sanders, Esq.                    **Counsel to Defendant Michael W. Crow**
Thomas M. Brown, Esq.
Michael St. Denis, Esq.
Sheppard, Mullin, Richter & Hampton LLP
333 South Hope Street, 48th Floor
Los Angeles, CA 90071
TEL: (213) 620-1780
FAX: (213) 620-1398


Peter F. Kuebler                          **Pro Se Defendant**
616 Crest Drive
Encinitas, California 92024
TEL: (619) 753-9170
TEL: (619) 597-3940


David Wiechert, Esq.                      **Courtesy Copy**
650 Town Center Drive, Suite 1900
Costa Mesa, California 92626
TEL: (714) 755-8075
FAX: (714) 557-9655

# CERTIFICATE OF SERVICE

I certify that I caused to be served by Federal Express overnight courier service the Opposition of SEC to Defendant Michael Crow's Motion to Modify Final Judgment of Permanent Injunction Pursuant to Federal Rule of Civil Procedure 60(b)(5) and Proposed Order and Pro Hac Vice Applications of Samuel Forstein and Wm. Smith Greig on this 4th day of January, 2002, on counsel for defendant as follows:

> James L. Sanders, Esq.
> McDermott, Will & Emery
> 2049 Century Park East, 34th Floor
> Los Angeles, CA 90067-3208

Dated: January 4, 2002

WM. SMITH GREIG
Attorney for Securities and
Exchange Commission
450 Fifth Street, N.W.
Washington, D.C. 20549-0207
Tel.: (202) 942-0916
Fax: (202) 942-9537